RECEIVED IN PRO SE OFFICE
MAY 14 2024
PRO SE OFFICE

Kovner, J.
Bloom,M.J,

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

————————————————————————x

**BARBARA HILL,**

1423 East 104 Street
Brooklyn NY 11236

                              Plaintiff              DOCKET NO.

                                          **24-cv-3506-RPK-LB**

         -against-
                                          **COMPLAINT**

                                          *Jury Trial Demanded*

**THE DEPARTMENT OF EDUCATION OF**

**THE CITY OF NEW YORK,**

Corporation Counsel
100 Church Street, New york, Newyork 10007

                              Defendants

————————————————————————x

**PLAINTIFF BARBARA HILL,** ("Plaintiff") proceeding Pro Se, as and for her Summons and

Complaint filed to protect her Constitutional rights against the above-captioned Defendant

**DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK** (henceforth

"Defendant") alleges upon knowledge as to her own facts and upon information and belief as to

all other matters:

**PRELIMINARY STATEMENT**

1. This is a civil action seeking injunctive relief, monetary relief, including past and on-going

economic loss, and compensatory damages for violations of Constitutional protected rights as a

1

Level Two Physical Therapist in good standing including her right to her religious beliefs as well as accommodations for these beliefs in her workplace. Plaintiff brings this action under 42 U.S.C. § 1983; Section 504 of the Rehabilitation Act; Stigma Plus Employment Discrimination ("Problem Code"); due process guaranteed under the Free Exercise Clause, First, Fifth, and Fourteenth Amendments to  the United States Constitution; 42 U.S.C. § 2000e, et seq.;  religious discrimination and retaliation; New York City Administrative Code §8-107;  and New York City Human Rights Law §296 which prevent employers from discriminating against employees based on an employee's religious beliefs and refusing to, or neglecting to,  prevent such deprivations and denials to Plaintiff.

2. Plaintiff, a physical therapist, worked with children who received Federal funds and services, and was deliberately retaliated and intentionally discriminated against, punished and removed from her workplace solely because of her religious beliefs, which prohibited her from getting vaccinated by the COVID-19 vaccine. As a result, she was terminated in February 2022 without just cause, without proper notice and without a due process hearing to particularize her religious accommodation requests and Appeals.

3. Defendant charged Plaintiff with misconduct for being insubordinate and placed her fingerprints into the "Problem Code" database without her knowledge or consent, then never gave her a hearing where she could clarify and particularize her sincere religious beliefs which forbade her from getting vaccinated with the COVID vaccine. She was deprived of due process before being harmed by Defendant's religious discrimination policy, namely the COVID Vaccine Mandate. ("CVM")

4. But for the approval of the denial of these protected rights by the Defendant, Plaintiff was maliciously and in bad faith terminated and stigmatized permanently by being placed on the Ineligible/Inquiry or "no hire" Problem Code List.

5. Plaintiff requests (1) her backpay and all benefits and pension steps due after Defendant's violations of law, public policy and rights removed her from her salary and career in October 2021; (2) judgment against Defendant for refusing to or neglecting to prevent such deprivations and denials to Plaintiff pursuant to Civil Service Law §75(b)(2)(a)(ii).

6. Plaintiff requests relief from the retaliation by the Defendant for her exercising her Constitutional rights to due process and freedom of religion.

## PARTIES

7. Plaintiff was an employee for the Department of Education of the City of New York in good standing as a Level Two senior Physical Therapist since 2010. As such, she had protected rights to her position. She also worked with children who received Federal funds for their special services. As a Physical Therapist she was in charge of programs and services funded by the Federal government through Defendant yet was unlawfully denied support for freedom from abuse of process and malicious prosecution, stigma plus character defamation and diminution of her salary and rights due to her claiming a sincere religious belief prohibiting her from getting the COVID Vaccine. At all times relevant herein, Plaintiff was a public employee of Defendant within the meaning of New York State Civil Service Law § 75-b(1)(b).

8. At all relevant times, the Defendant has overseen the NYC system of public schools located throughout all five (5) boroughs of the City of New York and been and continues to be a recipient of substantial federal funds, and as such, is subject to the mandates pursuant to City,

State and Federal Laws including the First, Fifth and Fourteenth Amendments to the United States Constitution, which prohibit any diminution of human rights, discrimination, fraudulent misrepresentation of the nature and consequences of the COVID Vaccine Mandate ("CVM") and retaliation against individuals, such as Plaintiff herein.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction pursuant to 42 U.S.C. §1983; 42 U.S.C. 2000e(f)(3) et Seq. ("Title VII"); §504 of the Rehabilitation Act; Stigma Plus discrimination; and the First, Fifth and Fourteenth Amendments to the Constitution.

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, and 28 U.S.C 1343(2)(4); and 42 U.S.C. §1981, et seq. for federal questions under 42 U.S.C. 1983, in particular the protections given by the Free Exercise Clause, First, Fifth and Fourteenth Amendments to the Constitution.

11.This Court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), as well as state law pursuant to claims codified in the New York City Human Rights Law ("NYCHRL") as Administrative Code §§8-107, and 8-502(a) in that such claims are so related to Plaintiff's claims within the original jurisdiction of this Court that they form part of the same case or controversy.

12. This Court has pendant and supplemental jurisdiction over Plaintiff's state law and city law claims, as the facts that form the basis of the state and city law claims are substantially similar to the facts that form the basis of the federal law claims. Defendant was at all times acting under color of law in breaching the covenant of good will and fair dealing with the Plaintiff as well as committing fraud in the inducement.

13. This action seeks recovery for monetary damages – in particular the backpay, car days, pensionable time and other benefits - for the harm caused to Plaintiff's reputation, livelihood, and career; additionally for the distress, suffering, mental, emotional, and physical anguish, and impairment of Plaintiff's ability to secure future employment due to her placement in the Problem Code database, and impairment of earning power inflicted upon her due to the negligence, carelessness, recklessness, and misfeasance, malfeasance, and negligent acts practices, and/or omissions of the Defendant.

14. Plaintiff filed a Notice of Claim and was deposed in a 50-H hearing but the Defendant has not made any attempt to resolve the issues contained therein.

15. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the New York City Department of Education is located at 65 Court Street, Brooklyn, N.Y.

## STATEMENT OF FACTS

16. This action seeks recovery for monetary damages – in particular the backpay, car days, pensionable time and other benefits - for the harm caused to Plaintiff's reputation, livelihood, and career; additionally for the distress, suffering, mental, emotional, and physical anguish, and impairment of Plaintiff's ability to secure future employment due to her placement in the Problem Code database, and impairment of earning power inflicted upon her due to the negligence, carelessness, recklessness, and misfeasance, malfeasance, and negligent acts practices, and/or omissions of the Defendant.

17. Plaintiff holds a clinical doctorate in Physical Therapy and was hired as a Level 1 pediatric

During the years of employment with the Defendant from 2010 to September 2021, Plaintiff was

never informed nor requested by Defendant to obtain any vaccine, and did not get vaccinated.

18. On September 10, 2021 Defendant sent to Plaintiff an Impact Bargaining Award wherein

Arbitrator Martin Scheinman, in excess of his authority, fraudulently created a new term of

employment, a lawless Leave Without Pay ("LWOP") that involuntarily removed all Department

employees from their jobs if they did not submit a COVID vaccination card to the Department by

October 4, 2021. In this Award between the UFT and Defendant, Scheinman also created a

procedure to apply for religious exemptions that was subsequently found to be "constitutionally

unsound" by the NY State Court of Appeals. Scheinman apologized in a separate Award for the

error dated June 27, 2022. See **EXHIBIT A** Scheinman Award Dated September 10, 2021;

**Exhibit B** Scheinman's Award dated June 27, 2022.

20. Nonetheless, Plaintiff relied on the first Scheinman ruling that discriminated against her

religious beliefs by ordering her to get the COVID vaccine before October 4, 2021, because she

wanted and needed to keep her job at the Department of Education. On September 20, 2021

Plaintiff applied for a religious accommodation saying that she could not, and would not be able

to get vaccinated due to her religious beliefs. Her beliefs are sincere and deeply held. **EXHIBIT**

**C** Statement of Declination of COVID Vaccine.

21. On September 22, 2021 Plaintiff received a denial of her religious accommodation request

from the Defendant saying that she "failed to meet the criteria for religious accommodation" and

that no remote site as an accommodation could be offered, because this would be an "undue

hardship" for the Department. No details about how or why the remote site would cause an

"undue hardship" were given. Many other employees of the Defendant were granted their

6

requested exemptions, both medical and religious, and were reassigned to administrative buildings in the NYC school district. Why not Plaintiff? This is discrimination on top of discrimination.

See: **NYC teachers with vaccine exemptions are being treated like pariahs**
https://nypost.com/2022/03/05/nyc-teachers-with-vaccine-exemptions-treated-like-outcasts/

22. On October 27, 2021 Plaintiff was placed on a Leave Without Pay ("LWOP") and could not work, could not get paid by any vendor connected with the Defendant due to the problem code placed on her personnel file and fingerprints, and could not enter her work or school sites. She was segregated from her colleagues and peers, harassed and discriminated against because of her religious beliefs, and medical condition. The Department's "no-hire/inquiry"/"Problem Code" blocked her from getting any salary from the Department, and tagged her file as guilty of insubordination and misconduct. **EXHIBIT D** Declaration of Barry Black; **EXHIBIT E** Declaration of Betsy Combier with email from Eric Amato.

23. Plaintiff was removed from receiving her salary without due process on October 27, 2021.

24. On November 15, 2021, after finding the religious exemption appeal process created by Arbitrator Martin Scheinman and his Company Scheinman Arbitration and Mediation ("SAMS") "constitutionally unsound", the United States Court of Appeals for the Second Circuit ordered fresh consideration of requests for religious accommodation saying "Such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law...... Accommodations will be considered for all sincerely held religious observances, practices, and beliefs."

25. On November 28, 2021 the Court of Appeals ruled that the Scheinman Award enriching himself and his company "Scheinman Arbitration and Mediation Services" ("SAMS") had

created a religious exemption appeals process that was "constitutionally unsound". The Citywide Panel was created, and was quickly seen as focused on deliberately depriving anyone who applied, including Plaintiff, of their due process rights under Human Rights Laws, Federal, State, and City in a similar manner as SAMS.

26. The procedure followed by the Citywide Panel was shrouded in mystery, as were the people who were on the Panel making decisions. In the Affidavit of one Panel member, Eric Eichenholtz, he stated the standard of review as " The Citywide Panel considers whether the requested religious accommodation presents an undue hardship on City operations. EEOC guidance provides that requiring an employer to bear more than a "de minimis," or a minimal, cost to accommodate an employee's religious belief is an undue hardship." See Affirmation of Eric J. Eichenholtz, In the Matter of Schiefer v The Board of Educ. of the City of N.Y., Index No. 155983/2022, doc. No, 41). This standard was thrown out by the U.S. Supreme Court in the ruling Groff v DeJoy, No. 22-174, June 23, 2023:

**Holding**: Title VII requires an employer that denies a religious accommodation to show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business."

Previously, employers could avoid granting religious accommodations to employees of faith simply by pointing to trifling, minimal, or "de minimis" effects. This decision means that more employers will be legally required to respect their religious employees by granting them accommodations.

27. Additionally, physical therapists have been officially recognized as capable of effective treatment by working remotely and virtually. This work is called Telerehabilitation, and is globally known and respected. See Telehealth.HHS.gov. https://telehealth.hhs.gov/

28. New York State Attorney General states in her online booklet titled "Religious Rights in the Workplace" https://ag.ny.gov/publications/religious-rights:

**"Employers Must "Reasonably Accommodate" Religious Beliefs**
State and federal laws require employers to make a reasonable religious accommodation for an employee's sincerely held religious beliefs, unless doing so creates an "undue hardship" on the
the employer. A reasonable religious accommodation is one that allows employees to follow  their religious beliefs with a minor change to the work environment. Protected religious beliefs
include not only those of traditional, organized religions, but also beliefs that are not part of a formal religion or sect, even if practiced by relatively few people.

To assess whether there is an undue burden or hardship, look at the specific facts of the request, such as:
• The type of workplace;
• The nature of the employee's duties;
• Any related cost incurred relative to the size and budget of the employer;
• The effect of an accommodation on the employer's business• Collective bargaining agreements or established seniority systems;
• The number of people who need the accommodation;
• The effect on workplace safety; and
• Whether the proposed accommodation conflicts with other laws.

It is also important to know that:
• The law protects all aspects of an individual's religious observance and practice, even practices that are not "required" by the religion;
• An employee must notify the employer of the need for an accommodation, and must provide sufficient time and information for the employer to assess the request;
• Employers and employees should work together to find an accommodation;
• An employer may ask questions about religious habits to evaluate the request and identify an accommodation; and
• An employer is not required to grant the specific accommodation requested, as long as the accommodation offered meets the employee's religious needs.

See also the NY POST article cited above in ¶21. Plaintiff is not fighting the COVID Vaccine Mandate ("CVM") but the manner it denied any and all mention of an accommodation for her

sincere religious belief and then punished her for holding such beliefs. Her termination caused harm to the special needs children she had cared for while employed.

28. On December 7, 2021 Plaintiff was terminated from her Early Intervention caseload at her private Agency.

29. In February 2022 Plaintiff was terminated (**EXHIBIT C(1)**.). On February 14, 2022 the City of New York Reasonable Accommodation Appeals Panel denied Plaintiff's request for a religious accommodation without attempting to give her a remote location or telehealth possibilities. In a letter dated March 22, 2022 Plaintiff received a letter telling her that on March 16, 2022 Plaintiff and her family were removed from NYC DOE Health insurance, but she could sign up and pay for COBRA, a very expensive program that she could not afford, as the NYCDOE had removed her from her salary.

30. All of the Agencies Plaintiff worked for except the Defendant gave her an accommodation, namely remote work. In February 2024 Plaintiff was rehired by Defendant as a physical therapist at a lower salary because she was designated as a "new hire". All her years of service were ignored/erased.

31. In a letter to this Court dated July 7, 2022 in Broecker et al. v New York City Department of Education et al Docket No. 21-CV-06387-KAM-LB: Attorney Austin Graff cited Scheinman for violating Department employees' rights:

In Scheinman's June 27 Award Scheinman wrote:

"... While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing. Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees

intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio."

Graff adds:

"First, Scheinman's words establish that but-for the Award, the NYCDOE could not have placed the Plaintiffs on leave without pay. As Plaintiffs argued in opposition to the Defendants' Motions, the Award was a violation of N.Y. Civil Service Law § 209.3.(f) and the numerous cases that have interpreted the statute, including a case from the New York Court of Appeals and numerous opinions issued by PERB. Therefore, if the Court finds that the Award violated N.Y. Civil Service Law § 209.3.(f), as the Plaintiffs argue, then the NYCDOE did not have any authority to place the Plaintiffs on leave without pay without due process, thereby violating the Plaintiffs' due process rights. Scheinman's words are additional evidence that the Plaintiffs have stated a plausible claim against the NYCDOE for a violation of 42 U.S.C. § 1983 meaning the NYCDOE's Motion to Dismiss should be denied.

Second, it was Scheinman who "created a new leave without pay" by issuing the Award. Scheinman establishes, by his own words, that he actively participated in the violation of the Plaintiffs' due process rights by "creat[ing] a new leave without pay" policy. Scheinman was not acting like an arbitrator who interpreted a contract or acted like an umpire in a dispute between the NYCDOE and the United Federation of Teachers ("UFT"), but actively created new policy that, as Scheinman admits, but-for his Award, "the Department was without the authority to remove these employees from the payroll without providing a due process hearing..... admitting that his actions caused the Plaintiffs to "suffer[] a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." Annis v. County of Westchester, 136 F.3d 239,245 (2d Cir. 1998)."

**EXHIBIT F** Graff letter re Scheinman.

32. All Plaintiff's rights under the Constitution, both Federal and State, city and State Human Rights Laws, NYS Administrative Code, as well as employment rights under the Collective Bargaining Agreements between the UFT and the DOE have been violated, in particular, subjecting Plaintiff to a hostile workplace environment and wrongful termination without any accommodation for her religious beliefs. Defendant wrongfully, deliberately, in bad faith and under color of law attempted to fraudulently induce her to choose to relinquish her protected beliefs in order to submit to an experimental vaccine.

## CAUSES OF ACTION
## AS AND FOR A FIRST CAUSE OF ACTION
## FOR RELIGIOUS DISCRIMINATION

33. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 32 as if the same were fully set forth at length herein.

34. Plaintiff submitted to Defendant in September 2021 a statement on her sincere religious beliefs which forbid her from getting vaccinated with the COVID-19 vaccine. She was denied, yet other teachers similarly situated were granted exemption/accommodations.

35. Defendants have neither a legitimate nor compelling interest in exercising express and overt religious discrimination. Defendant's invocation of "undue hardship" defenses are plainly false pretexts attempting to cover for the Defendant's explicit religious discrimination.

36. Defendant had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" without any further details or reason, and terminated her employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023 :

"The Court holds that showing "more than a de minimis cost," as that phrase is used in common parlance, does not suffice to establish "undue hardship" under Title VII. ….. What is most important is that "undue hardship" in Title VII means what it says, and courts should resolve whether a hardship would be substantial in the context of an employer's business in the commonsense manner that it would use in applying any such test….. Further, a hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice, cannot be considered "undue." Bias or hostility to a religious practice or accommodation cannot supply a defense."

37. Defendant wrongfully, deliberately, in bad faith and under color of law attempted to fraudulently induce her to choose to relinquish her protected beliefs in order to submit to an experimental vaccine, and then punished her for not agreeing to this extortion and discrimination.

38. A government employer may not punish some employees, but not others, for the same activity, due only to differences in the employees' religious beliefs. Likewise, the government may not test the sincerity of an employee's religious beliefs by judging whether his or her beliefs are doctrinally coherent or legitimate in the eyes of the government. Nor may a government employer discriminate against religion by implementing policies that exempt employees for secular reasons more readily than religious ones. All such discrimination violates the Free Exercise and Establishment Clauses of the First Amendment and the corresponding rights incorporated against the states by the Fourteenth Amendment. "When there is no plausible explanation for religious discrimination other than animus, it is subject to strict scrutiny, regardless of whether the government employer admits that its actions were motivated by hostility to certain religions." (JANE DOES et al., v BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO et al., No. 22-1027, U.S. Court of Appeals D.C. No. 1:21-CV-02637-RM-KMT., May 7, 2024)

39. Based on the foregoing, Defendant subjected Plaintiff to discrimination on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law), and N.Y.C. Human Rights Law.

## AS AND FOR A SECOND CAUSE OF ACTION

## FOR FAILURE TO REASONABLY ACCOMMODATE
## THE PLAINTIFF'S SINCERELY HELD RELIGIOUS BELIEFS

40. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 39 as if the same were fully set forth at length herein.

41. Plaintiff has sincerely held religious beliefs which forbid her from getting vaccinated with the COVID-19 vaccine.

42. Defendant had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" on the Department without any further details or reason, and terminated her employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023.

43. No reasonable accommodation was offered to Plaintiff yet other employees of the Defendant received accommodations for their religious and/or medical accommodations. Indeed, employees accused of misconduct just like Plaintiff, with a Problem Code now on her file and fingerprints, have been reassigned to the famous "rubber room" since the mid 1990s. This reassignment may last from several months to 7-15 years. Defendant's Office of Personnel Investigation ("OPI") is the same office that monitors the Problem Code and actively sent employees of the Defendant into reassignment rooms/locations during the 2020-2021, 2021-2022 school years. See NY POST article, ¶21. Defendant refused to reassign Plaintiff, despite the reassignment of hundreds of other employees.

44. In Garvey v City of NY Index no. 85163/2022, Judge Ralph Porzio wrote in his decision:

14

"There was no reason why the City of New York could not continue with a vaccine or test policy, like the Mayor's Executive Order that was issued in August 2021...Though vaccination should be encouraged, public employees should not have been terminated for their non-compliance....The Health Commissioner cannot create a new condition of employment for City employees. The Mayor *cannot exempt certain employees from these orders, as stated in Executive Order 62*". See **EXHIBIT G,** Executive Order 62. Additionally, this Court should be aware that delivery people, school bus drivers, as well as food servers were exempt from Defendant's COVID mandate. None of these people were included in the order to get vaccinated or get fired.

45. Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

## AS AND FOR A THIRD CAUSE OF ACTION
## PLAINTIFF'S TERMINATION VIOLATED
## SECTION 504 OF THE REHABILITATION ACT

46. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 45 as if the same were fully set forth at length herein.

47. The Rehabilitation Act is codified under Title 29 (29 U.S.C. § 794(a)) and 29 C.F.R. § 33.13. The Rehabilitation Act protects disabled persons from discrimination in the

provision of public services. Section 504 of the Rehabilitation Act provides that "[n]o

otherwise qualified individual with a disability, shall, solely by reason of her or his

disability, be excluded from the participation in, be denied the benefits of, or be subjected

to discrimination under any program or activity receiving Federal financial assistance."

29 USC § 794(a).

48. Section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794 (hereinafter referred to

as "Section 504"), provides that no otherwise qualified individual with a disability...shall, solely

by reason of her or his disability, be excluded from the participation in, be denied the benefits of,

or be subjected to discrimination under any program or activity receiving Federal financial

assistance..." 29 U.S.C. § 794(a).

49. Retaliation claims are analyzed under the same framework as Americans with Disabilities

Act ("ADA") claims, the elements of which to prove a prima facie case being, "(i)

Plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that

Plaintiff was involved in protected activity; (iii) an adverse decision or course of action

was taken against Plaintiff; and (iv) a causal connection exists between the protected

activity and the adverse action." Weixel v. Bd. of Educ. of City of New York, 287 F.3d

138, 148 (2d Cir. 2002); citing Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234

(2d Cir. 2000). The Plaintiff's burden at this prima facie stage is de minimis. Treglia v.

Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).

50. Plaintiff argues that she has established a prima facie case of retaliation by the Defendant for her not getting vaccinated with the COVID vaccine, namely by placing her on the problem code for misconduct and removing her from her salary without due process/accommodation for her religious beliefs, and her wrongful termination was an action that harmed the students she was working with, namely children who identified as in need of physical therapy as defined in 20 U.S.C. §1401 (26)(A) "Related services".

51. As Plaintiff was involved in protected activity, and as an adverse action was taken against Plaintiff because of her being discriminated against because of her religious reliefs and the students were deprived of their Federally funded services due to her termination, the burden shifts to the Defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision.

52. Thereafter, if Defendant meets this burden, Plaintiff will submit evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation and discrimination. Cifra v. Gen.Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

**WHEREFORE,** the Plaintiff demands judgement against the Defendant for all compensatory, emotional, psychological and punitive damages, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which she is entitled, including but not limited to:

1.   Awarding Plaintiff her backpay, including her full salary with the Department in February 2022  plus salary steps added since termination;

2.      Awarding Plaintiff all the financial damages that ensued after she was

placed on a lawless and unconstitutional Leave Without Pay in October

2021, including health benefits and any other related expenses;

3.      Removing Plaintiff from the Problem Code;

4.      Granting such other and further relief that the Court deems just and

proper.

Dated: May 14, 2024

*Barbara Hill*

Barbara Hill
*Plaintiff Pro Se*
1423 East 104 Street
Brooklyn, N.Y. 11236
b.cazeau@gmail.com
347-200-4003

Case 1:24-cv-03506-RPK-LB    Document 1    Filed 05/14/24    Page 19 of 83 PageID #: 19



September 10, 2021

**<u>Via E-Mail Only</u>**
Renee Campion, Commissioner
Steven H. Banks, Esq.
New York City Office of Labor Relations
The Office of Labor Relations
22 Cortlandt Street, 14th Floor
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

Beth Norton, Esq.
Michael Mulgrew, President
United Federation of Teachers
52 Broadway, 14th Floor
New York, NY 10004

Re:    **Board of Education of the City School District of the City of New York
       and
       United Federation of Teachers, Local 2, AFT, AFL-CIO
       (Impact Bargaining)**

Dear Counsel:

        Enclosed please find my Award in the above referenced matter.

        Thank you.

                                        Sincerely,

                                        Martin F. Scheinman

MFS/sk
BOE.UFT.Impact Bargaining.awd

322 Main Street  ◆  Port Washington, NY 11050  ◆  516.944.1700  ◆  fax: 516.944.1771  ◆  www.ScheinmanNeutrals.com

Ex 1

```
----------------------------------- X
In the Matter of the Arbitration
                                     X
             between
                                     X
BOARD OF EDUCATION OF THE CITY                  Re: Impact Bargaining
SCHOOL DISTRICT OF THE CITY OF       X
NEW YORK
                                     X
           "Department"
                                     X
             -and-
                                     X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO                X

             "Union"                 X

----------------------------------- X
```

**APPEARANCES**

> **For the Department**
>     Renee Campion, Commissioner of Labor Relations
>     Steven H. Banks, Esq., First Deputy Commissioner
>     and General Counsel of Labor Relations
>
>
>
>
> **For the Union**
> STROOCK & STROOCK & LAVAN, L.L.P.
>     Alan M. Klinger, Esq.
>
>
> Beth Norton, Esq., UFT General Counsel
> Michael Mulgrew, UFT President

**BEFORE:** Martin F. Scheinman, Esq., Arbitrator

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM    INDEX NO. 155983/2022

NYSCEF DOC. NO. 4                                                    RECEIVED NYSCEF: 07/19/2022

## BACKGROUND

The Union ("Union" or "UFT") protests the Department of Education's ("Department" or "DOE") failure to reach agreement on the impact of its decision mandating all employees working in Department buildings show proof they started the Covid-19 vaccination protocols by September 27, 2021. The Union contends the Department failed to adequately provide, among other things, for those instances where employees have proof of a serious medical condition making the vaccine a danger to their health, as well as for employees who have a legitimate religious objection to vaccines.

Most of the basic facts are not in dispute.

For those in the New York City ("NYC" or "City") metropolitan area, we are now in the 18th month of the Covid-19 pandemic. During that time, we have seen substantial illness and loss of life. There have been periods of significant improvement and hope, but sadly, we have seen resurgence with the Delta variant. Throughout this period, NYC and its municipal unions have worked collaboratively to provide needed services for the City's 8.8 million residents in as safe an environment as possible. Yet, municipal employees have often borne great risk. The Department and the UFT are no exception. The DOE and the UFT immediately moved to remote instruction and then later a hybrid model of both in-person and remote learning for the 2020-2021 school year. Educators at all levels strove to deliver the best experience possible under strained circumstances. For this

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM    INDEX NO. 155983/2022
NYSCEF DOC. NO. 4                                              RECEIVED NYSCEF: 07/19/2022

coming school year, both the DOE and the UFT have endeavored to return, as much as possible, to in-person learning. They have developed protocols regarding masking and distancing to effectuate a safe environment for the City's students and educators.

To this end, the Delta resurgence has complicated matters. In recognition of increased risk, there have been various policies implemented at City agencies and other municipal entities. Mayor de Blasio in July 2021 announced a "Vaccine-or-Test" mandate which essentially requires the City workforce, including the UFT's educators, either to be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021.

Most relevant to this matter, on August 23, 2021, the Mayor and the NYC Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in NYC DOE buildings. Those employees would be subject to a "Vaccine Only" mandate. That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto DOE premises, would not be paid for work and would be at risk of loss of job and benefits. This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021. That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation. Nor did it address matters of due process with regard to job and benefits protection.

3

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM    INDEX NO. 155963/2022

NYSCEF DOC. NO. 4                                                    RECEIVED NYSCEF: 07/19/2022

The UFT promptly sought to bargain the impact and implementation of the Vaccine Only mandate. A number of discussions were had by the parties but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters. The City/DOE did not challenge the statement of impasse and PERB appointed me to mediate the matters. Given the exigencies of the imminent start of the school year and the coming of the September 27, 2021, mandate, together with the importance of the issues involved to the workforce, mediations sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions. Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved. By agreement of the parties, the process moved to arbitration. They asked I serve as arbitrator.[1]

Arbitration sessions were held on September 6 and 7, 2021. During the course of the hearings, both sides were given full opportunity to introduce evidence and argument in support of their respective positions. They did so. Both parties made strenuous and impassioned arguments reflecting their viewpoints on this entire issue.

During the course of these hearings, I made various interim rulings concerning the impact of the "Vaccine Only" mandate. I then

---

[1] My jurisdiction is limited to the issues raised during impact bargaining and not with regard to the decision to issue the underlying "Vaccine Only" order.

4

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM    INDEX NO. 155983/2022
NYSCEF DOC. NO. 4    RECEIVED NYSCEF: 07/19/2022

directed the parties to draft language reflecting those rulings. Even though I am very familiar with the language of the current Collective Bargaining Agreement, as well as the parties' relationship since I am a member of their permanent arbitration panel and have served as a fact-finder and mediator during several rounds of bargaining, I concluded the parties are more familiar with Department policy and how leave and entitlements have been administered in accordance with prior agreements. As such, my rulings reflect both the understandings reached during the negotiations prior to mediation, those reached in the mediation process and the parties' agreed upon language in response to my rulings. All are included, herein.

I commend the parties for their seriousness of purpose and diligence in addressing these complicated matters. The UFT made clear it supports vaccination efforts and has encouraged its members to be vaccinated. Nonetheless, as a Union, it owes a duty to its members to ensure their rights are protected. The City/DOE demonstrated recognition of the importance of these issues, particularly with regard to employees' legitimate medical or religious claims. I appreciate both parties' efforts in meeting the tight timeline we have faced and the professionalism they demonstrated serving the citizens of the City and what the million plus students deserved. They have invested immense effort to insure such a serious issue was litigated in such a thoughtful way.

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM    INDEX NO. 155983/2022

NYSCEF DOC. NO. 4                                                    RECEIVED NYSCEF: 07/19/2022

Yet, in the end, it falls to me, as Arbitrator, to arrive at a fair resolution of the matters at hand.

This matter is one of the most urgent events I have been involved with in my forty (40) plus years as a neutral. The parties recognized the complexity of the issues before me, as well as the magnitude of the work that lies ahead to bring this conflict to completion in a timely manner. For this reason, they understood and accepted the scope and complexity of this dispute could not be handled by me alone. They agreed my colleagues at Scheinman Arbitration and Mediation Services ("SAMS") would also be involved.

I want to thank my colleagues at SAMS, especially Barry J. Peek, for their efforts and commitment to implementing the processes to resolve this matter. This undertaking could not be accomplished by any single arbitrator.

## Opinion

After having carefully considered the record evidence, and after having the parties respond to countless inquiries. I have requested to permit me to make a final determination, I make the rulings set forth below. While some of the language has been drafted, initially, by the parties in response to my rulings, in the end the language set forth, herein, is mine alone. I hereby issue the following Award:

## I.    Exemption and Accommodation Requests & Appeal Process

As an alternative to any statutory reasonable accommodation

6

Case 1:24-cv-03506-RPK-LB   Document 1   Filed 05/14/24   Page 26 of 83 PageID #: 26

process, the City, the Board of Education of the City School District for the City of New York (the "DOE"), and the United Federation of Teachers, Local 2, AFT, AFL-CIO (the "UFT"), (collectively the "Parties") shall be subject to the following Expedited Review Process to be implemented immediately for full-time staff, H Bank and non-pedagogical employees who work a regular schedule of twenty (20) hours per week or more inclusive of lunch, including but not limited to Occupational Therapists and Physical Therapists, and Adult Education teachers who work a regular schedule of twenty (20) or more hours per week. This process shall only apply to (a) religious and medical exemption requests to the mandatory vaccination policy, and (b) medical accommodation requests where an employee is unable to mount an immune response to COVID-19 due to preexisting immune conditions and the requested accommodation is that the employee not appear at school. This process shall be in place for the 2021-2022 school year and shall only be extended by mutual agreement of the Parties.

Any requests to be considered as part of this process must be submitted via the SOLAS system no later than Monday, September 20, 2021, by 5:00 p.m.

A. Full Medical Exemptions to the vaccine mandate shall only be considered where an employee has a documented contraindication such that an employee cannot receive any of the three (3) authorized vaccines (Pfizer, Moderna, J&J)—with contraindications delineated in CDC clinical

7

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM        INDEX NO. 155983/2022
NYSCEF DOC. NO. 4                                        RECEIVED NYSCEF: 07/19/2022

considerations for COVID-19 vaccination. Note that a prior immediate allergic reaction to one (1) type of vaccine will be a precaution for the other types of vaccines, and may require consultation with an allergist.

B. Temporary Medical Exemptions to the vaccine mandate shall only be based on the following valid reasons to defer or delay COVID-19 vaccination for some period:

o Within the isolation period after a COVID-19 infection;

o Within ninety (90) days of monoclonal antibody treatment of COVID-19;

o Treatments for conditions as delineated in CDC clinical considerations, with understanding CDC guidance can be updated to include new considerations over time, and/or determined by a treating physician with a valid medical license responsible for the immunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of time because of active therapy or treatment (e.g., stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination;

o Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination.

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM
INDEX NO. 155983/2022
NYSCEF DOC. NO. 4
RECEIVED NYSCEF: 07/19/2022

Length of delay for these conditions may vary, and the employee must get vaccinated after that period unless satisfying the criteria for a Full Medical Exemption described, above.

C. Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).

D. There are cases in which, despite an individual having sought and received the full course of the vaccination, he or she is unable to mount an immune response to COVID-19 due to preexisting immune conditions. In these circumstances, each individual case shall be reviewed for potential accommodation. Medical accommodation requests must be documented in writing by a medical doctor.

E. The initial determination of eligibility for an exemption or accommodation shall be made by staff in the Division of Human Capital in the Office of Medical, Leaves and Benefits; the Office of Equal Opportunity; and Office of Employee

9

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM    INDEX NO. 155983/2022

NYSCEF DOC. NO. 4                                          RECEIVED NYSCEF: 07/19/2022

Relations. These determinations shall be made in writing no later than Thursday, September 23, 2021, and, if denied, shall include a reason for the denial.

F. If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination. The request for appeal shall include the reason for the appeal and any additional documentation. Following the filing of the appeal, any supplemental documentation may be submitted by the employee to the Scheinman Arbitration and Mediation Services ("SAMS") within forty eight (48) hours after the filing of the appeal. If the stated reason for denial of a medical exemption or accommodation request is insufficient documentation, the employee may request from the arbitrator and, upon good cause shown, the arbitrator may grant an extension beyond forty eight (48) hours and permit the use of CAR days after September 27, 2021, for the employee to gather the appropriate medical documentation before the appeal is deemed submitted for determination.

G. A panel of arbitrators identified by SAMS shall hear these appeals, and may request the employee or the DOE submit additional documentation. The assigned arbitrator may also request information from City and/or DOE Doctors as part of the review of the appeal documentation. The assigned

10

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM
NYSCEF DOC. NO. 4

INDEX NO. 155983/2022
RECEIVED NYSCEF: 07/19/2022

arbitrator, at his or her discretion, shall either issue a decision on the appeal based on the documents submitted or hold an expedited (virtual) factual hearing. If the arbitrator requests a factual hearing, the employee may elect to have a union representative present but neither party shall be required to be represented by an attorney at the hearing. The expedited hearing shall be held via Zoom telecommunication and shall consist of brief opening statements, questions from the arbitrator, and brief closing statements. Cross examination shall not be permitted. Any documentation submitted at the arbitrator's request shall be provided to the DOE at least one (1) business day before the hearing or the issuance of the written decision without hearing.

H. Appeal decisions shall be issued to the employee and the DOE no later than Saturday September 25, 2021. Appeal decisions shall be expedited without full Opinion, and final and binding.

I. While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll consistent with Section K below. However, if a larger number of employees than anticipated have a pending appeal as of September 27, 2021, as determined by SAMS, SAMS may award different interim relief consistent with the parties' intent. Those employees who are vaccinated and have applied for an

11

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM    INDEX NO. 155593/2022
NYSCEF DOC. NO. 4                                      RECEIVED NYSCEF: 07/19/2022

accommodation shall have the ability to use CAR days while their application and appeal are pending. Should the appeal be granted, these employees shall be reimbursed any CAR days used retroactive to the date of their initial application.

J. The DOE shall cover all arbitration costs from SAMS under this process. To the extent the arbitrator requests additional medical documentation or information from the DOE, or consultation with City and/or DOE Doctors, arranging and paying for such documentation and/or consultation shall be the responsibility of the DOE.

K. An employee who is granted a medical or religious exemption or a medical accommodation under this process and within the specific criteria identified above shall be permitted the opportunity to remain on payroll, but in no event required/permitted to enter a school building while unvaccinated, as long as the vaccine mandate is in effect. Such employees may be assigned to work outside of a school building (e.g., at DOE administrative offices) to perform academic or administrative functions as determined by the DOE while the exemption and/or accommodation is in place. For those with underlying medical issues granted an accommodation under Section I(D), the DOE will make best efforts to ensure the alternate work setting is appropriate for the employee's medical needs. The DOE shall make best efforts to make these assignments within the same borough as

12

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM

INDEX NO. 155983/2022

NYSCEF DOC. NO. 4

RECEIVED NYSCEF: 07/19/2022

the employee's current school, to the extent a sufficient number of assignments exist in the borough. Employees so assigned shall be required to submit to COVID testing twice per week for the duration of the assignment.

L. The process set forth, herein, shall constitute the exclusive and complete administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school. The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution.

## II. Leave

A. Any unvaccinated employee who has not requested an exemption pursuant to Section 1, or who has requested an exemption which has been denied, may be placed by the DOE on leave without pay effective September 28, 2021, or upon denial of appeal, whichever is later, through November 30, 2021. Such leave may be unilaterally imposed by the DOE and may be extended at the request of the employee consistent with Section III(B), below. Placement on leave without pay for these reasons shall not be considered a disciplinary action for any purpose.

13

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM
NYSCEF DOC. NO. 4

INDEX NO. 155983/2022
RECEIVED NYSCEF: 07/19/2022

B. Except as otherwise noted, herein, this leave shall be treated consistent with other unpaid leaves at the DOE for all purposes.

C. During such leave without pay, employees shall continue to be eligible for health insurance. As with other DOE leaves without pay, employees are prohibited from engaging in gainful employment during the leave period.

D. Employees who become vaccinated while on such leave without pay and provide appropriate documentation to the DOE prior to November 30, 2021, shall have a right of return to the same school as soon as is practicable but in no case more than one (1) week following notice and submission of documentation to the DOE.

E. Pregnancy/Parental Leave

i. Any soon-to-be birth mother who starts the third trimester of pregnancy on or before September 27, 2021, (e.g. has a due date no later than December 27, 2021), may commence UFT Parental Leave prior to the child's birth date, but not before September 27, 2021.

ii. No documentation shall be necessary for the early use of Parental Leave, other than a doctor's written assertion the employee is in her third trimester as of September 27, 2021.

iii. Eligible employees who choose to start Parental Leave prior to the child's birth date, shall be required to first use CAR days until either: 1) they exhaust CAR/sick days,

14

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM

NYSCEF DOC. NO. 4

INDEX NO. 155983/2022

RECEIVED NYSCEF: 07/19/2022

at which point the Parental Leave shall begin, or 2) they give birth, at which point they shall be treated as an approved Parental Leave applicant for all purposes, including their prerogative to use additional CAR days prior to the commencement of Parental Leave.

iv. Eligible employees who have a pregnancy disability or maternity disability outside of the regular maternity period may, in accordance with existing rules, borrow CAR/sick days and use a Grace Period. This eligibility to borrow CAR/sick days does not apply to employees during the regular maternity recovery period if they have opted to use Parental Leave.

v. In the event an eligible employee exhausts CAR/sick days and parental leave prior to giving birth, the employee shall be placed on a leave without pay, but with medical benefits at least until the birth of the child. As applicable, unvaccinated employees may be placed in the leave as delineated in Section II(A).

vi. If not otherwise covered by existing Family Medical Leave Act ("FMLA") or leave eligibility, an employee who takes Parental Leave before the birth of the child shall be eligible to be on an unpaid leave with medical benefits for the duration of the maternity recovery period (i.e., six weeks after birth or eight weeks after a birth via C-Section)

15

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM

INDEX NO. 155983/2022

NYSCEF DOC. NO. 4

RECEIVED NYSCEF: 07/19/2022

vii.  All other eligibility and use rules regarding UFT Parental
Leave as well as FMLA remain in place.

## III. Separation

A. During the period of September, 28, 2021, through October 29,
2021, any employee who is on leave without pay due to
vaccination status may opt to separate from the DOE. In order
to separate under this Section and receive the commensurate
benefits, an employee must file a form created by the DOE which
includes a waiver of the employee's rights to challenge the
employee's involuntary resignation, including, but not limited
to, through a contractual or statutory disciplinary process. If
an employee opts to separate consistent with this Section, the
employee shall be eligible to be reimbursed for unused CAR days
on a one (1) for one (1) basis at the rate of 1/200th of the
employee's salary at departure per day, up to 100 days, to be
paid following the employee's separation with documentation
including the general waiver and release. Employees who elect
this option shall be deemed to have resigned involuntarily
effective on the date contained in the general waiver as
determined by the DOE, for non-disciplinary reasons.    An
employee who separates under this Section shall continue to be
eligible for health insurance through September 5, 2022, unless
they are eligible for health insurance from another source
(e.g., a spouse's coverage or another job).

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM

NYSCEF DOC. NO. 4

INDEX NO. 155983/2022

RECEIVED NYSCEF: 07/19/2022

B. During the period of November 1, 2021, through November 30, 2021, any employee who is on leave without pay due to vaccination status may alternately opt to extend the leave through September 5, 2022. In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health insurance through September 5, 2022. Employees who comply with the health order and who seek to return from this leave, and so inform the DOE before September 5, 2022, shall have a right to return to the same school as soon as is practicable but in no case more than two (2) weeks following notice to the DOE.  Existing rules regarding notice of leave intention and rights to apply for other leaves still apply. Employees who have not returned by September 5, 2022, shall be deemed to have voluntarily resigned.

C. Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under Sections III(A) and III(B). Except for the express provisions

17

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM    INDEX NO. 155983/2022

NYSCEF DOC. NO. 4    RECEIVED NYSCEF: 07/19/2022

contained, herein, all parties retain all legal rights at all times relevant, herein.

September 10 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NASSAU     )

I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

September 10 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator

DOE.UFT.Impact Bargaining.awd

18

Case 1:24-cv-03506-RPK-LB    Document 1    Filed 05/14/24    Page 38 of 83 PageID #: 38



SCHEINMAN
ARBITRATION & MEDIATION SERVICES

June 27, 2022

**Via E-Mail Only**
Liz Vladeck, Esq.
New York City Department of Education
Office of the General Counsel
52 Chambers Street, Room 308
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

Michael Mulgrew, President
Beth Norton, Esq.
United Federation of Teachers
52 Broadway, 14th Floor
New York, NY 10004

Re:     **Board of Education of the City School District of the City of New York
and
United Federation of Teachers, Local 2, AFT, AFL-CIO
(Proof of Vaccination)**

Dear Counsel:

Enclosed please find my Opinion and Award in the above referenced matter.

I have also enclosed my bill for services rendered.

Thank you.

Sincerely,

Martin F. Scheinman

MFS/sk
NYCDOE.UFT.proof of vaccination.trans

322 Main Street ◆ Port Washington, NY 11050 ◆ 516.944.1700 ◆ fax: 516.944.1771 ◆ www.ScheinmanNeutrals.com

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM     INDEX NO. 155290/2022

NYSCEF DOC. NO. 31                                    RECEIVED NYSCEF: 07/01/2022

```
-------------------------------- X
In the Matter of the Arbitration
                                  X
         between
                                  X       Re: Proof of
BOARD OF EDUCATION OF THE CITY                Vaccination
SCHOOL DISTRICT OF THE CITY OF    X
NEW YORK
                                  X
         "Department"
                                  X
         -and-
                                  X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO             X

         "Union"                  X

-------------------------------- X
```

**APPEARANCES**

      **For the Department**
        Liz Vladeck, General Counsel


      **For the Union**
      STROOCK & STROOCK & LAVAN, L.L.P.
       Alan M. Klinger, Esq.

       Beth Norton, Esq., UFT General Counsel
       Michael Mulgrew, UFT President


**BEFORE:**  Martin F. Scheinman, Esq., Arbitrator

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM    INDEX NO. 155220/2022
NYSCEF DOC. NO. 31                                          RECEIVED NYSCEF: 07/01/2022

**BACKGROUND**

The Union protests the Department's decision to summarily place approximately eighty two (82) Department employees on leave without pay, with benefits, effective April 25, 2022. This action was based upon information the Department received from a separate investigative agency these employees' proof of COVID-19 vaccination was allegedly fraudulent. The Union contends the issue of whether the Department's action is proper and falls within the scope of my September 10, 2021, Award ("Award").

Most of the basic facts are not in dispute.

In July 2021, former Mayor de Blasio announced a "Vaccine-or-Test" mandate which required the City workforce, including the educators, to either be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021. Thereafter, on August 23, 2021, Mayor de Blasio and the New York City Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in Department buildings. Those employees would be subject to a "Vaccine Only" mandate. That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto Department premises, would not be paid for work and would be at risk of loss of job and benefits.

2

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM    INDEX NO. 155220/2022

NYSCEF DOC. NO. 31    RECEIVED NYSCEF: 07/01/2022

This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021.  That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation.  Nor did it address matters of due process with regard to job and benefits protection.

The Union promptly sought to bargain the impact and implementation of the Vaccine Only mandate.  The parties had a number of discussions, but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters.  The Department did not challenge the statement of impasse and PERB appointed me to mediate the matters.  Mediation sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions.  Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved.  By agreement of the parties, the process moved to arbitration.  They asked I serve as arbitrator.

Arbitration sessions were then held.  On September 10, 2021, I issued an Award which set forth a detailed procedure to be followed in the cases of employees who sought an exemption to the Vaccination Mandate based on a medical condition or religious reasons.

3

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM INDEX NO. 155220/2022

NYSCEF DOC. NO. 31 RECEIVED NYSCEF: 07/01/2022

In accordance with the procedure set forth in my Award, employee requests for an exemption were initially submitted to the Department along with any supporting documentation. An employee wishing to appeal an adverse determination by the Department was given the opportunity to appear at a hearing before an impartial arbitrator who was authorized to render a final and binding decision. Approximately five hundred (500) appeals were determined by the arbitration process. Pending the arbitrator's decision, the employee could not be removed from the payroll.

On April 19, 2022, the Department informed approximately eight two (82) employees they were being placed on leave without pay, with benefits, effective April 25, 2022, based on allegations their proof of COVID-19 vaccination was fraudulent. The employees were told they could contact the Department if they believed the allegation they submitted fraudulent proof of vaccination was wrong. On April 21, 2022, the Union wrote the Department and demanded it rescind its decision to remove these employees from the payroll without the benefit of a due process hearing.

By letter dated April 22, 2022, the Department set forth its position placement of these employees on a leave without pay status did not constitute discipline, and, therefore, did not implicate the disciplinary procedures set forth in the Education Law or the parties' Collective Bargaining Agreement ("Agreement").

4

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM

NYSCEF DOC. NO. 31

INDEX NO. 155220/2022

RECEIVED NYSCEF: 07/01/2022

Thereafter, by letter dated May 3, 2022, the Union wrote to me requesting I take jurisdiction over this dispute. The Union cited to that portion of the Award which states "should either party have reason to believe the process set forth herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution".

By letter dated May 4, 2022, the Department wrote in opposition to the Union's May 3, 2022, letter. The Department stated it was in full compliance with my Award, as well as the Agreement and applicable law. The Department also insisted this matter was not properly before me.

On May 4, 2022, I conducted a conference call with the parties. At that time, each side was given the opportunity to argue their positions.

Thereafter, on May 6, 2022, the Union submitted further argument in support of its position. The Department responded in a letter dated May 10, 2022.

Upon my receipt of the parties' written submissions, I closed the record.

## DISCUSSION AND FINDINGS

### The Issues:

The basic issues to be decided are as follows:

5

INDEX NO. 155220/2022
FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM

NYSCEF DOC. NO. 31

RECEIVED NYSCEF: 07/01/2022

1. Is the Department's decision to place the approximately eighty two (82) employees on leave without pay, with benefits, subject to my jurisdiction pursuant to the September 10, 2021, Award?

2. If so, what shall be the remedy?

**Position of the Parties**

The Department insists the facts of circumstances regarding its placement of the eighty two (82) employees on leave without pay, with benefits, is not within my jurisdiction pursuant to the Award. According to the Department, the Award sets forth an expedited process to review Department employees' requests for exemptions and accommodations from the August 21, 2021, mandate to submit proof of COVID-19 vaccination by September 29, 2021. The Department maintains the requests for an exemption or accommodation were limited to medical and religious grounds. It contends no other issue is covered by the Award.

The Department contends it placed the employees on a leave without pay status as a result of the Department's receipt of information from a law enforcement agency the employees in question submitted fraudulent proof of vaccination in order to comply with Commissioner Chokshi's order which required vaccination of all Department staff.

According to the Department, the Courts have held compliance with the Commissioner Chokshi's Order is a "condition of

6

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM

INDEX NO. 155220/2022

NYSCEF DOC. NO. 31

RECEIVED NYSCEF: 07/01/2022

employment". The Department maintains this situation is no different to the Department's unilateral action against an employee who is not certified. As such, the Department maintains placing employees on leave without pay for failing to comply with the Commissioner Chokshi's Order comports with applicable due process procedures as long as notice is given, and the employee has an opportunity to respond. In support of its position the Department cites Broecker v. N.Y. Dep't of Educ., 21-CV-6387, 2022 WL 426113 at *7-8 (E.D.N.Y. Feb. 11, 2022); and N.Y. City Mun. Labor Comm. V. City of New York, 151169/2022 (Sup. Ct. N.Y. County Apr. 21, 2022).

The Department argues employees who are identified in connection with a law enforcement investigation into the submission of fraudulent vaccination cards are outside the scope of the Award. Furthermore, the Department insists the Award's reference to a party's failure to implement the process does not apply to the facts and circumstances presented, here. According to the Department, the language relied upon by the Union refers specifically to the "administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school". The Department asserts since that process is not at issue, here, the Union's claim is misplaced.

7

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM
NYSCEF DOC. NO. 31

INDEX NO. 155220/2022

RECEIVED NYSCEF: 07/01/2022

For the reasons set forth above, the Department contends the Union's request for relief pursuant to the Award must be denied.

The Union, on the other hand, argues the Department's decision to place these employees on leave without pay, with benefits, is predicated on the Award. It insists this matter is subject to my continued jurisdiction. The Union asserts the Agreement prohibits an employee from being removed from the payroll without establishing probable cause in a due process hearing. [1]

The Union maintains the Department's contention this situation is akin to the removal of an uncertified employee is misplaced. According to the Union, approval of certification is issued by the State. In addition, the Union insists an employee is either certified by the State or is not, there is no underlying question of fact to be determined. The Union asserts if an employee proves they have completed all of the necessary paperwork, but they are not yet certified, they will not be terminated.

The Union urges in this instance 'the Department made a unilateral decision to place the employees on leave, without pay, based solely on a communication from another agency the employees were not vaccinated. The Union contends the Department has no direct knowledge of whether that assertion is true or false.

---

[1] There are limited exceptions to this procedure which are inapposite.

8

INDEX NO. 155220/2022

RECEIVED NYSCEF: 07/01/2022

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM

NYSCEF DOC. NO. 31

According to the Union, the Department removed the employees from the payroll and subsequently allowed them to provide additional evidence they are vaccinated.  The Union maintains as of May 6, 2022, employees who have contacted the Department asserting they have been placed on leave without pay in error have not received any response, yet they remain suspended without pay.

The Union asserts the only authority for the Department to place employees on leave without pay, with benefits, is the Award. It contends the Department is improperly invoking the Award, and the action cannot be taken until the dispute concerning their vaccination status is determined through the Award's stated process.

In short, the Union argues the Department's unilateral decision to place employees on leave without pay, with benefits, based on the communication from another agency the employees are not vaccinated falls within the jurisdiction of the Award.

**Opinion**

Certain preliminary comments are appropriate.  As an arbitrator my role is a limited one.  In order for me to determine whether I can assert jurisdiction over the Department's actions as alleged by the Union, I am limited by the language of the Award. If the Award is clear, I must enforce it according to its plain meaning.

9

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM

NYSCEF DOC. NO. 31

INDEX NO. 155220/2022

RECEIVED NYSCEF: 07/01/2022

With these principles in mind, I turn to the facts presented.

I find I have jurisdiction to consider this matter. While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.

Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

Implicit in such a designation of leave without pay is the individual failed to comply with the vaccine mandate. Here, there is a dispute whether the employees did or did not comply. Without that being assessed, or at least submitting evidence to show a high likelihood of non-compliance, the predicate for placing an employee on leave without pay does not exist.

The Department's decision to automatically place these employees on leave without pay is inconsistent with the language and underpinnings of my Award. Nothing in the Award grants the Department such use of leave without pay status.

10

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM INDEX NO. 155220/2022

NYSCEF DOC. NO. 31                                           RECEIVED NYSCEF: 07/01/2022

Based upon the above, I find the Department failed to properly implement the due process protections of my Award.  The Union has the right to assert the Department's process "is not implemented in good faith."  To be clear, nothing in my Award was intended to abrogate any due process rights the parties otherwise maintained with regard to employment status.

I also disagree with the Department's position the court decisions it cites support the removal of these employees from pay status without a hearing.  Those court decisions confronted an entirely different factual scenario.  Unlike this matter, in those cited cases, there was no claim the employees at issue were vaccinated.

In denying the request for a preliminary injunction, Justice Kim, in NYC Municipal Labor Committee, supra., specifically found the absence of that factual issue in her determination.  Here, of course, the employees assert they are in fact vaccinated.  This raises a factual issue that is ripe for adjudication pursuant to my Award.

Based on the reasons set forth above, I take jurisdiction over the Department's placement of the approximately eighty two (82) employees placed on leave without pay, with benefits.  The parties shall meet within seven (7) calendar days of the date of this Award to attempt to agree on a procedure to review an

11

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM

NYSCEF DOC. NO. 31

INDEX NO. 155220/2022

RECEIVED NYSCEF: 07/01/2022

employee's claim they have submitted proof of vaccination. If the parties are unable to agree on such a procedure, I shall immediately schedule a hearing and issue an expedited Award establishing the proper protocol to provide the employees the appropriate due process procedure.

12

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM    INDEX NO. 155220/2022

NYSCEF DOC. NO. 31    RECEIVED NYSCEF: 07/01/2022

**AWARD**

1.  Pursuant to Section 1L of my Award dated September 10, 2021, I shall assume jurisdiction over the Department's decision to place eighty two (82) employees on leave without pay, with benefits, effective April 25, 2022.

2.  The parties shall meet within seven (7) calendar days of the date of this Award to attempt to agree on a procedure to review an employee's claim they have submitted proof of vaccination. If the parties are unable to agree on such a procedure, I shall immediately schedule a hearing and issue an expedited Award establishing the proper protocol to provide the employees the appropriate due process procedure.

June 27 , 2022.

_____
Martin F. Scheinman, Esq.
Arbitrator


STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NASSAU     )

I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

June 27 , 2022.

_____
Martin F. Scheinman, Esq.
Arbitrator


DOE.UFT.CHIARA.NAKASHIAN.AWD

13

# Statement of Declination for Offer of Covid-19 Vaccine Product



**Barbara Hill**

Statement of Declination for Offer of Covid-19 Vaccine Product
I, Barbara Hill a living female retain and reserve all of my God given rights including sole possession and sole use of all my biological materials which are granted to me by my Creator.
My employer Department of Education has required a Covid-19 vaccination product to be received by me pursuant to and satisfying NYC Department of Health Mandate.
I retain the right to decline all attempts to access, influence and or otherwise alter any and all of my God given biological material and or biological systems which are unique, flawless and original design and craftsmanship of my Creator and of which my Creator has granted me sole possession, proprietorship and use of. This is my sincere religious conviction that I may not commit an abomination act against God's temple which is my body.
Genesis 2:9 Out of the ground the Lord God caused to grow every tree that is pleasing to the sight and good for food. Revelations 22:2 and the leaves of the tree were for the healing of the nations. The Covid-19 vaccine in its use is a defilement of ones temple therefore encroaches my sincere religious beliefs.
Mankind was given authority and rights by God to rule over the birds of the air, the beasts of the field the fishes of the sea, the earth and to subdue it. Ones inalienable rights to liberty, religious freedom, and state of well-being cannot be taken or given away to any man.
I require that any and all product required by my employee or workplace for me to receive be both entirely retrievable from and also removable in its entirety from my body, person and womanhood at the conclusion of each and every work period and or work shift and also again at the completion of my contracted obligations with my location of employment and or work.
Pursuant to my above statement, I decline the offer for Covid-19 Vaccine Product.
By
Barbara Hill
September 20, 2021. All Rights Reserved.

# Your application for a COVID-19 Vaccine Related Exemption or Accommodation has been received.

From: solas_donotreply@schools.nyc.gov

To: Hill Barbara BHill2@schools.nyc.gov

Date: Mon, Sep 20, 2021, 9:42 PM

09/20/2021

Case#: A79246

File# 4002194

EMP ID: 1209056

Dear BARBARA HILL,

Thank you for submitting your application online!

Type of Application: COVID-19 Vaccine Related Exemption or Accommodation

Application Communications:

During your application process, all communications will be sent to your DOE e-mail account. You must continue to check your DOE e-mail, even if you listed a different preferred email address.

Changes to Your Application:

Unfortunately, you cannot make changes to your submitted application. If you need to make changes, you must withdraw this application and re-submit your request. To withdraw the application please log back into SOLAS: https://dhrnycaps.nycenet.edu/SOLAS.

**Questions:**

For technical questions regarding the SOLAS system, please call HR Connect at 718-935-4000 and refer to the case number at the top of this notice.For more information, you may also visit the HR Connect Employee Portal by logging in with your DOE/Outlook User ID and password at https://doehrconnect.custhelp.com.

Sincerely,

1/2

*HR Connect*

Medical, Leaves, and Records Administration

Please do not reply to this message via e-mail. This email address is automated.

---

## Re:

From: **Mccoy-dailey Keisha** KMccoydailey@schools.nyc.gov

To: **Hill Barbara** BHill2@schools.nyc.gov, **Henry Avien** AHenry22@schools.nyc.gov

Date: Thu, Sep 23, 2021, 8:27 PM

Hi

Thank you for letting me know

I appreciate it very much.

Please keep me posted in regards to the exemption decision.


Thank you

Get Outlook for Android

**From:** Hill Barbara <BHill2@schools.nyc.gov>
**Sent:** Thursday, September 23, 2021 8:20:08 PM
**To:** Henry Avien <AHenry22@schools.nyc.gov>; Mccoy-dailey Keisha <KMccoydailey@schools.nyc.gov>
**Subject:**


Dear Dr. Dailey,

I am writing to inform you that I have filed for an exemption appeal. Given the circumstances, it is possible that I may not receive a timely response.

I want to take the time to thank you for your leadership and service to child with disabilities.
May God bless you all.
Barbara. Hill



Get Outlook for iOS

## Status of Your Application/Appeal for a Covid-19 Vaccine Mandate Related Exemption or Accommodation

From: Division of Human Capital DHC@schools.nyc.gov

Date: Mon, Sep 27, 2021, 6:27 PM

Colleague,

According to our records, you have a pending appeal with the Arbitrators on your application for a COVID-19 Vaccine Mandate Related Exemption or Accommodation. Until a specific date for implementation of the vaccine mandate is announced, the current vaccine or weekly testing mandate remains in place and **you must continue to report to your regular assignment and work location until further notice.** If you work at a school and need to be tested, you will likely be able do so as part of the weekly testing occurring in your school building.

We will continue to share information as it becomes available. If/when the vaccine mandate goes effect, if you have a decision from the Arbitrators granting your appeal or if your appeal remains pending at that time, you will be advised on your next step for where to report.

Thank you,

Division of Human Capital



THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, N.Y. 10007

EXECUTIVE ORDER NO. 1

JANUARY 1, 2022

**CONTINUATION OF PRIOR EXECUTIVE ORDERS**

By the power vested in me as Mayor of the City of New York, it is hereby ordered:

Section 1. All Executive Orders in effect on December 31, 2021 are hereby continued unless specifically revoked, revised, or superseded by a subsequently issued Executive Order.

§ 2. This Order shall take effect immediately.

Eric L. Adams
Mayor



THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, N.Y. 10007

## EMERGENCY EXECUTIVE ORDER NO. 1
### January 1, 2022

WHEREAS, the COVID-19 pandemic has severely impacted New York City and its economy, and is addressed effectively only by joint action of the City, State, and Federal governments; and

WHEREAS, the City requires stability and predictability in the promulgation and enforcement of orders related to COVID-19; and

WHEREAS, Emergency Executive Order No. 98, issued on March 12, 2020, declared a state of emergency to address the threat and impacts of COVID-19 in the City of New York; and

WHEREAS Emergency Executive Order No. 331, issued on December 30, 2021, extended the state of emergency in the City of New York for a period not to exceed thirty days, or until rescinded; and

WHEREAS, on October 29, 2021, U.S. Food and Drug Administration authorized the emergency use of the Pfizer-BioNTech COVID-19 Vaccine for the prevention of COVID-19 to include children 5 through 11 years of age; and

WHEREAS, on December 26, 2021, New York State Governor Kathy Hochul issued Executive Order No. 11.1 to address new emerging threats across the State posed by COVID-19, finding that New York is experiencing COVID-19 transmission at rates the State has not seen since April 2021 and that the rate of new COVID-19 hospital admissions has been increasing over the past month to over 300 new admissions a day; and

WHEREAS, the recent appearance in the City of the highly transmissible Omicron variant of COVID-19 suggests an increased risk of reinfection; and

WHEREAS, 70% of the City's residents are fully vaccinated and mandating vaccinations at the types of establishments that residents frequent will incentivize vaccinations, increasing the City's vaccination rates and saving lives;

WHEREAS, additional reasons for requiring the measures continued in this Order are set forth in prior Emergency Executive Order Nos. 316 and 228;

NOW, THEREFORE, pursuant to the powers vested in me by the laws of the State of New York and the City of New York, including but not limited to the New York Executive Law, the New York City Charter and the Administrative Code of the City of New York, and the common law authority to protect the public in the event of an emergency:

Section 1.   I hereby direct that the "Key to NYC" program, set forth in Emergency Executive Order No. 317, dated December 15, 2021, and most recently extended by Emergency Executive Order No. 334, dated December 30, 2021, shall remain in effect.

§ 2. This Emergency Executive Order shall take effect immediately and shall remain in effect for five (5) days unless it is terminated or modified at an earlier date.

Eric L. Adams
Mayor



**United Federation of Teachers**
*A Union of Professionals*

**March 1st, 2022**

**UFT Case#: K** 74338
Barbara Hill
1423 E 104th Street
Brooklyn, NY 11236
**File/EIS#:** 1209056
**School/District:** K396/75

Attention: Karen Solimando

Dear Chancellor Banks,

Pursuant to the procedures set forth in Article 18 of the Collective Bargaining Agreement covering Physical Therapists, the UFT requests a conference with you or your designated representative to discuss the following complaint.

The complaint is that on February 11, 2022, the grievant was improperly terminated.

This is a clear violation of Articles 2, 19 and 21.

As a remedy, we request that the grievant be reinstated to his/her position and made whole in all ways.

The employee shall be represented at the conference by a representative designated by the Union.

Sincerely,

David Campbell
Director, UFT Grievance/Arbitration Department

Cc:   BR: Elizabeth Perez
      DR:  David Doorga

Officers Michael Mulgrew *President*, LeRoy Barr *Secretary*, Michael Sill *Assistant Secretary*, Debra Penny *Treasurer*, Tom Brown *Assistant Treasurer*
Vice Presidents: Karen Alford, Mary Vaccaro, MaryJo, Ginese, Anne Goldman, Janella T. Hinds, Richard Mantell, Leo Gordon



**UFT**
United Federation of Teachers
*A Union of Professionals*

May 5, 2022

Barbara Hill
1423 East 104th Street
Brooklyn,, NY 11236-4515

Case #K74338

Dear Ms. Hill,

The Department of Education (DoE) has officially informed us that they will not be scheduling Step 2 conferences for those who filed grievances protesting being terminated for not complying with the vaccine mandate. The DoE stated that compliance with the order is a condition of employment and therefore they are not required to provide contractual due process.

The Union disagrees with the DoE's interpretation and has filed an action in State Court challenging the DoE's position. Should the judge find in our favor, your grievance, (which was filed timely to preserve grievance timelines), will be heard at a later scheduled date.

We understand your disappointment in not having your grievance heard and will keep you abreast of the decision once rendered by State Court.

Sincerely,

David Campbell
Director
UFT Grievance/Arbitration Department

Officers: Michael Mulgrew *President*, LeRoy Barr *Secretary*, Michael Sill *Assistant Secretary*, Debra Penny *Treasurer*, Tom Brown *Assistant Treasurer*
Vice Presidents: Karen Alford, Mary Vaccaro, MaryJo, Ginese, Anne Goldman, Janella T. Hinds, Richard Mantell, Leo Gordon

 **Department of Education**

August 22, 2022

HILL BARBARA
1423 EAST 104 STREET
BROOKLYN, NY 11236

Employee ID #: 1209056
Dear HILL BARBARA,

Earlier this year, you were terminated from employment from the New York City Department of Education due to non-compliance with the employee COVID-19 vaccine mandate. You are now being offered the opportunity to return to employment if you become fully vaccinated, provided that you meet the following conditions:

- Provide proof that that you have received at least one dose of the COVID-19 vaccine no later than September 6, 2022.
- Provide proof of full COVID-19 vaccination (meaning the receipt of two shots of two dose vaccine, if applicable) no later than October 21, 2022 (45 days after September 6).

Former employees who provide such proof will be re-hired within two weeks of providing proof of full vaccination, but no earlier than September 20, 2022.

Please be aware, that employees will be rehired into their title but may receive a different assignment including to a different school.

To provide proof of vaccination by these dates, please take the following steps:

- Send an email to VaccineMandateTermination@schools.nyc.gov
- Put your name and Employee ID # in the subject line (your Employee ID # is found under your address on the top of this page)
- Attach to your email proof of COVID-19 vaccination which can be an image of your vaccination card, NYS Excelsior Pass, or another government record
- You will receive further communications to the email you use to send this information, so please be sure to use an email you will be monitoring.

Thank you,

NYC Department of Education Division of Human Resources

# WELFARE FUND

## United Federation of Teachers
52 Broadway • New York, New York 10004    (212) 539-0500

CONTROL #    3193639
WF-ID # 6679271628

Date of Notice: 12/02/22

BARBARA HILL
1423 E 104TH ST
BROOKLYN, NY 11236-4515

Dear BARBARA HILL:

You are receiving this letter because our records indicate that you are no longer on payroll and therefore are not eligible for benefits. As such, you may qualify for COBRA coverage. Please be aware that the availability of your dependent's coverage is based on your eligibility. This would include the NYS extension covering young adult children through age 29 and the Federal Age 26 Dependent Child coverage.

There are two COBRA plans available: City COBRA, covering your medical/hospital benefits and the UFT Welfare Fund COBRA for supplemental benefits such as dental, optical, hearing aid and UFT Welfare Fund Express Scripts prescription drug plan. Both coverage and premiums would be retroactive to the date you lost coverage.

In order to obtain City COBRA (medical/hospital benefits), you must complete a City of New York Employee Benefits Program - Continuation of Coverage Application (NYC COBRA). This application is available through your payroll secretary. NYC COBRA applications are also available on the NYC Office of Labor Relations website www.nyc.gov/olr .

Information concerning your benefit eligibility and coverage is available on our website www.uftwf.org . General eligibility questions may be directed to our member services department at 212-539-0500. If you would like to purchase UFT Welfare Fund COBRA coverage, please contact our COBRA unit at 212-539-0560 within 60 days of the date of this letter. A UFT Welfare Fund COBRA application will be sent only upon request. Your eligibility for UFT Welfare Fund COBRA benefits will be determined when you apply for coverage.

**Please note:**
If you already applied for UFT Welfare Fund COBRA, please retain this information for your file.

Sincerely,

George M. Reis, CPA
Comptroller

PCPS



Local 2 American Federation of Teachers, NYSUT, AFL-CIO

BENEFITS Michael Mulgrew, Chair • Karen Alford • Thomas Murphy • Richard Mantell • Leo Gordon

740
**INITIAL LETTER**

03/22/2022

Robert Hill
1423 East 104 Street
Brooklyn, NY 11236

Dear Robert Hill,

If you are separating from New York City (NYC) service due to a retirement and are eligible for the NYC Health Benefits program as an NYC retiree, please disregard this notification. Your health insurance will continue since you are an NYC retiree, as long as you have submitted the Health Benefit program application upon your retirement.

On 03/17/2022, you experienced a COBRA qualifying event. This letter is to notify you and your qualified family members of your right to continue group health coverage under COBRA.

Your City health coverage ended on:    03/16/2022

Federal law permits you to continue coverage(s), at your expense beyond this date.  If you have dependents who were also covered under the plan, you also have the option to continue their benefits. You may not add dependents at this time.

The City will not "carve out" benefits provided through your Welfare Fund that are similar to those available in your plan's Optional Rider. If you decide to purchase the Optional Rider, you must pay for the entire Optional Rider offered by your plan.

If you wish to continue coverage, complete the enclosed enrollment form. Return the completed COBRA form to your plan at the address listed on the form within 60 days of receipt of notice of the last day of coverage. You are responsible for paying the full premium for your coverage. The premium indicated in this letter reflects 102% of the current group rate for your plan. However, because these rates are subject to change you should check with the plan to determine the premium at the time of your COBRA enrollment.

Wait for notification from the plan before mailing in your first payment. Payment must be made payable to the health plan and mailed directly to the plan.

To continue your Welfare Fund benefits through COBRA, contact your Welfare Fund to determine which of those benefits are available, and the associated cost. If you intend to obtain Welfare Fund benefits under COBRA, please so indicate on the COBRA Continuation of Coverage application.

**Conversion Contracts**

If you do not wish to continue hospital and medical coverage under COBRA you may use the same application to request a direct payment conversion contract from your plan. Upon receipt of an application for conversion, the health plan will send you a direct payment contract and a bill. Generally, conversion contracts will be more expensive than COBRA for the same benefits or will offer benefits less comprehensive than COBRA. Optional benefits are not available under conversion. If you have GHI CBP/EBCBS you may purchase either the GHI or Blue Cross direct payment plan separately. Decide whether direct payment conversion or COBRA continuation coverage is best to meet your needs. If you decide to continue coverage under COBRA, you will again be eligible to obtain a direct payment contract when COBRA terminates. Contact the health plan for information.

If you do not wish to continue coverage of benefits provided by your Welfare Fund under COBRA, conversion to private coverage may be available for medical and life insurance benefits within 45 days of termination of coverage.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
                               :

MICHAEL KANE, et al.,              :

                 Plaintiffs,     :

                               :

         - against -           :     Case No.  21-cv-7863 (VEC) (Lead)

BILL DE BLASIO, et al.,        :

                               :

                Defendants.     :
-----------------------------------------------------------X
                               :

MATTHEW KEIL, et al.         :

                   Plaintiffs,     :

                               :

         - against -           :     Case No.  21-cv-8773 (VEC)

THE CITY OF NEW YORK, et al.,    :

                               :

                Defendants.     :
-----------------------------------------------------------X

**DECLARATION OF BARRY BLACK IN FURTHER SUPPORT OF**
**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**BARRY BLACK**, an attorney admitted to practice before this Court, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true:

1. I am an attorney for Plaintiffs and fully familiar with the facts and circumstances of this case.

2. I respectfully submit this declaration in response to Mallory O. Sullivan's Declaration.

3. Attached as Exhibit 1 is a true and correct copy of a declaration from Betsy Combier.

4. Attached as Exhibit 2 is a true and correct copy of a declaration from Plaintiff Dennis Strk.

5. Attached as Exhibit 3 is a true and correct copy of a declaration from proposed class member Patricia Catoire.

### First False Assertion in Sullivan Declaration

6. The Sullivan Declaration asserts that there are two different kinds of codes in the NYCAPS system: a "problem code" and some other unnamed code, the "problem code" indicating anything from a performance issue to criminal activity, and the unspecified code flagging the absence of vaccination. Glaringly absent from Sullivan's recitation is how these codes appear to the reader. That is because there is no difference; they are one and the same.

7. Indeed, DOE Human Resources Director Eric Amato explicitly stated in an email to UFT Assistant Secretary Michael Sill and General Counsel Beth Norton that a "[p]roblem code was added to all employees who were placed on 2VM vaccine mandate leave. Our central offices placed this code on all employees who went on the leave." Ex. 1, ¶ 13, Ex. A.

8. Moreover, terminated Plaintiffs had a problem code plainly visible in their payroll portal, indicated by a "**Problem** PR" notation in their salary history tab. Ex. 2, ¶ 5, Ex. A; Ex. 1 ¶ 10 (DOE's "problem code" is also referred to as a "pr" code).

1

## Second False Assertion in Sullivan Declaration

9.  The Sullivan Declaration falsely posits that the no one outside DOE's Office of Personnel
    Investigations has access to the problem code. To the contrary, any non-DOE school or official
    that wants to learn whether a former DOE employee has a problem code in his or her personnel
    file can easily do so in a variety of ways. For example, non-DOE schools which offer DOE-
    funded positions have access to the DOE's payment portal, Galaxy, which allows them to see
    problem codes; indeed Plaintiffs present evidence of at least 15 former DOE employees who
    were not hired at non-DOE schools because the non-DOE schools discovered their problem
    codes. Ex. 1, ¶¶ 14-18. Simple phone calls work as well: a former UFT Special Representative
    explained that she used to "receive[] countless calls every week asking . . . if there was a
    problem code on an employee's personnel file" and that her UFT colleague next door would
    then check her computer and "tell [her] 'yes' or 'no' within a minute." Ex. 1, ¶ 8. In some
    instances, DOE representatives disclosed the problem codes to prospective employers from
    non-DOE schools calling to verify employment. Ex. 1, ¶ 19. In one instance, a third-party HR
    representative at Bright Start Learning Center of NYC—a non-DOE school operating pursuant
    to NYS Department of Health Bureau of Early Intervention directives—informed a former
    DOE employee that she had had been flagged as "ineligible" in her personnel file. Ex. 3, ¶¶ 8-
    9, 13.

10. It is noteworthy that such evidence was already in the record before Defendants filed the
    Sullivan declaration, but Defendants did not even attempt to discredit it. ECF No. 162 ¶¶ 11-
    13 (Plaintiff Solon was told by an official at non-DOE school that it could not hire her because
    of the problem code in her personnel file).

2

### Further Evidence of Irreparable Harm

11. Plaintiffs' irreparable harm did not cease with their terminations. Instead, the problem codes

    in their files make them unemployable indefinitely at both DOE and non-DOE schools.

12. The UFT has stated unequivocally that such problem codes "will be removed once [they] are

    eligible to return to work." Ex. 1, ¶ 13, Ex. A.

13. Thus, Plaintiffs face ongoing coercion to violate their religious beliefs and become vaccinated,

    in order to become employable – and remove the scarlet letter from their permanent records.

14. The Court is reminded that Plaintiff Solon's problem code was removed within 24 hours of her

    getting vaccinated. ECF No. 162 ¶ 18.

Dated:  New York, New York

      June 3, 2022                         Respectfully submitted,

                                     Barry Black
                                     Nelson Madden Black LLP
                                     *Attorney for Plaintiffs*
                                     475 Park Avenue South, Suite 2800
                                     New York, NY 10016
                                     (212) 382-4303

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X :
                                                            :
MICHAEL KANE, et al.,                                       :
                                                            :
                                    Plaintiffs,             :
                                                            :   Case No.  21-cv-7863 (VEC) (Lead)
                 - against -                                :
                                                            :
DE BLASIO et al.,                                           :
                                                            :
                                    Defendants.             :
------------------------------------------------------------X :
                                                            :
MATTHEW KEIL, et al.                                        :
                                                            :
                                    Plaintiffs,             :
                                                            :   Case No.  21-cv-8773 (VEC)
                 - against -                                :
                                                            :
THE CITY OF NEW YORK et al.,                                :
                                                            :
                                    Defendants.             :
------------------------------------------------------------X

## DECLARATION OF BETSY COMBIER

Betsy Combier declares as follows, pursuant to 28 U.S.C. § 1746:

1.  My name is Betsy Combier and I am the President and lead paralegal of Advocatz, a paralegal consulting business for people who need a partner as they go through the Courts, grievances, or life problems.

2.  I respectfully submit this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction.

3.  I know the facts stated herein to be true based upon my personal knowledge and based upon my review of the files of hundreds of my clients whom I have represented in proceedings with the New York City Department of Education ("DOE"), except

for statements which are made on information and belief and, as to those, I verily believe them.

4.    I have a degree in Child Psychology from Northwestern University, an MA Certificate from the Johns Hopkins' School for Advanced International Studies where my specialization was the Soviet Military Industrial Complex, an MPS in Interactive Telecommunications from New York University, and a Certificate in Art and Drama Therapy from The New School.

5.    I have successfully assisted parents, children, and caregivers with the educational needs of their children, and I have been advocating for the due process rights of Union members—in particular, members of the AFL-CIO, United Federation of Teachers ("UFT") and Local 32 B&J—for 17 years.

6.    From 2007-2010, I worked as Special Representative to the UFT where my job was to oversee the eight re-assignment centers in the NYC DOE, first in all boroughs, and then at the Manhattan, Brooklyn, and Bronx locations.

7.    I am very familiar with the arbitration hearing process, set forth in New York Education Law § 3020-a, having assisted teachers in approximately 300 3020-a hearings since 2003.

8.    I am also very familiar with "problem codes"—the flag the DOE puts in the personnel file of employees to indicate that they should not be hired due to unexplained misconduct of some kind. Employees can be flagged for everything from receiving an unsatisfactory or ineffective rating to engaging in egregious criminal acts.  During the three years I worked at the UFT headquarters, I received countless calls every week

2

asking me if there was a problem code on an employee's personnel file. When that happened, I would simply ask the person next door to my office, another UFT Special Representative, whether she could check her computer, and she would tell me "yes" or "no" within a minute.

9. When the DOE puts a problem code in the employee's personnel file, it also places a flag on the employee's fingerprints, which is then sent to the national databases at both the Federal Bureau of Investigation and the State Division of Criminal Justice Services.

10. I have represented more than 15 DOE employees before the DOE's Office of Personnel Investigation in proceedings in which they requested the removal of their problem codes. The flag has several names such as "problem code," "pr" code, "pc" code, "ineligible," and "no hire/inquiry" code; however, all refer to a salary block, whatever title it is given.

11. I have helped approximately 20 DOE employees get their problem codes removed from their personnel files.

12. I know of many former DOE employees who have problem codes in their personnel files because they declined to be vaccinated in violation of the DOE's mandate and were not granted a religious or medical exemption. The DOE places a problem code on the employee's personnel file immediately upon getting information that the employee did not submit proof of vaccination. As soon as the employee gets the vaccination and submits proof, the code is removed from his or her file.

3

13.     Attached as Exhibit A is a true and correct redacted copy of an email one of my

        clients received from Eric Amato at the DOE. The email was also sent to UFT

        Assistant Secretary Michael Sill and copies UFT officials including its General

        Counsel Beth Norton. The email confirms that DOE employees who were placed on

        leave without pay for failing to be vaccinated in violation of the DOE's mandate had

        a problem code (as opposed to any other kind of code) added to their personnel files.

14.     I am aware that non-DOE schools located in counties outside New York City receive

        funds from the NYC DOE for certain teaching positions. These may include, for

        example, special education or STEM teachers.

15.     The DOE pays the salaries for these positions using the same system it uses to pay

        traditional DOE employees, which is called Galaxy. Galaxy indicates whether the

        employee has a problem code in his or her file and blocks payment to the employee

        with this flag/code if viewed in the personnel file.

16.     Many of my clients with problem codes in Galaxy have looked for other teaching jobs

        outside the NYC DOE while their problem code appeals were ongoing.

17.     At least 15 of my clients with problem codes were not hired by prospective schools

        outside the DOE because such schools saw the problem codes in Galaxy, even though

        those schools were located outside New York City.

18.     Such schools were able to see the codes because the position applied for was financed

        by the DOE and so the school used the Galaxy system and could check the

        prospective employee's file.

4

19.    I also have several clients who applied to schools outside of the DOE who were not hired by their prospective employers because when the prospective employers reached out to the DOE to verify my clients' previous employment, the DOE representative told them about the problem codes in my clients' files.

20.    In sum, any non-DOE school that wants to learn whether a former DOE employee has a problem code in his or her personnel file can readily do so.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       June 3, 2022

By: Betsy Combier

5

# EXHIBIT A

**From: Amato Eric** <EAmato4@schools.nyc.gov>
Date: Wed, Feb 9, 2022 at 8:06 AM
Subject: RE: PR code
To: ██████████████████████████ Michael Sill <msill@uft.org>
Cc: Beth A. Norton
<bnorton@uft.org>, Kking@uft.org <Kking@uft.org>, dcampbell@uft.org <dcampbell@uft.org>

PR = Problem code – Problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave. Our central offices placed this code on all employees who went on the leave. It will be removed once you are eligible to return to work.

Thanks,
Eric

# THE SCHER LAW FIRM, LLP

### ONE OLD COUNTRY ROAD, SUITE 385
### CARLE PLACE, NY 11514

MARTIN H. SCHER*

JONATHAN L. SCHER**

———

AUSTIN R. GRAFF*

———

* Also Admitted in District of Columbia
** Also Admitted in New Jersey

TEL  516-746-5040

———

FAX  516-746-5043

W. SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P. BRINT
COUNSEL

ADAM GANG
COUNSEL

ROBERT S. NAYBERG
(1959-2019)

July 7, 2022

**BY FEDERAL EXPRESS AIRBILL NO. 777327941330
AND BY ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    Broecker, *et al.* v. New York City Department of Education, *et al.*
           Docket No. 21-CV-06387-KAM-LB

Dear Judge Matsumoto:

        This law firm represents the Plaintiffs in the above-referenced Action.  The Plaintiffs request permission to supplement their opposition to the Motions to Dismiss based upon new documentary evidence obtained yesterday contained in the filing with the New York State Supreme Court, County of New York in a newly filed litigation entitled *In the Matter of the Application of the Board of Education of the City School District of the City of New York, et al. v. United Federation of Teachers, Local 2, AFT, AFL-CIO, et al.* under Index Number 451995/2022 ("DOE Proceeding"), regarding a dispute over a new arbitration decision by the Defendant Martin Scheinman ("Scheinman") materially and relevant to the pending Motions to Dismiss.

        The *New York Post* reported yesterday on the DOE Proceeding which challenges Scheinman's Opinion and Award relating to 82 NYCDOE employees placed on leave without pay by the New York City Department of Education ("NYCDOE") for filing allegedly false vaccine cards. *See,* **Exhibit A,** a copy of the *New York Post* article.

        Through due diligence, we were able to find the NYCDOE's filings in the DOE Proceeding, which included the new Opinion and Award issued by Scheinman that directly relates to the pending Motions to Dismiss in the above-referenced Action.

# THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 2 of 3

In Scheinman's newest Opinion and Award (**Exhibit B** ("Opinion and Award")), Scheinman states with respect to the UFT Arbitration Award ("Award"):

> ... While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.
>
> Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

**Exhibit B**, at page 10.

This language, written by Scheinman in the Opinion and Award supports three arguments previously made by the Plaintiffs in opposition to the Motions to Dismiss:

First, Scheinman's words establish that but-for the Award, the NYCDOE could not have placed the Plaintiffs on leave without pay. As Plaintiffs argued in opposition to the Defendants' Motions, the Award was a violation of N.Y. Civil Service Law § 209.3.(f) and the numerous cases that have interpreted the statute, including a case from the New York Court of Appeals and numerous opinions issued by PERB. Therefore, if the Court finds that the Award violated N.Y. Civil Service Law § 209.3.(f), as the Plaintiffs argue, then the NYCDOE did not have any authority to place the Plaintiffs on leave without pay without due process, thereby violating the Plaintiffs' due process rights. Scheinman's words are additional evidence that the Plaintiffs have stated a plausible claim against the NYCDOE for a violation of 42 U.S.C. § 1983 meaning the NYCDOE's Motion to Dismiss should be denied.

Second, it was Scheinman who "created a new leave without pay" by issuing the Award. Scheinman establishes, by his own words, that he actively participated in the violation of the Plaintiffs' due process rights by "creat[ing] a new leave without pay" policy. Scheinman was not acting like an arbitrator who interpreted a contract or acted like an umpire in a dispute between the NYCDOE and the United Federation of Teachers ("UFT"), but actively created new policy that, as Scheinman admits, but-for his Award, "the Department was without the authority to remove these employees from the payroll without providing a due process hearing." **Exhibit B**,

Case 1:21-cv-06387-KAM-LB   Document 133   Filed 07/07/22   Page 3 of 3 PageID #: 3530

# THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 3 of 3

at page 10. Scheinman's own words establish that the Plaintiffs have stated a plausible claim for a violation of 42 U.S.C. § 1983 against the NYCDOE and Scheinman because as he admits, without his Award, the NYCDOE would have had to provide the Plaintiffs with due process before placing them on leave without pay, admitting that his actions caused the Plaintiffs to "suffer[ ] a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). Accordingly, the Scheinman Defendants' Motion to Dismiss must be denied.

Third, Scheinman confirms that it was him who "decided [leave without pay] was appropriate", which means that the NYCDOE and the UFT did not "continu[e] to negotiate until an 'agreement' [was] reached" but instead the resolution of the NYCDOE's and UFT's impasse was imposed by Scheinman in violation of N.Y. Civil Service Law § 209.3.(f). *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo*, 49 PERB P4560 (2016). Scheinman's words confirm that the Award was a newly created and imposed remedy to the school district's impasse in negotiations with its union and therefore violated clear and unambiguous statutory language requiring a school district, like the NYCDOE, and its union, like the UFT, to overcome any impasse at the bargaining table and not through any other means. As a result, Scheinman's words support the Plaintiffs' argument that they have a plausible claim that the Award was promulgated and instituted without any statutory authority.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The Plaintiffs thank the Court for its courtesies in accepting the Plaintiffs' supplemental filing, considering the Opinion and Award only came into the Plaintiffs' possession yesterday and the Plaintiffs believed, as shown above, that the Opinion and Award is material and relevant to the pending Motions to Dismiss.

Respectfully submitted,

THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)

H:\Maruno, Michele\Teacher Litigation\Motions\Motion # 002 - Motions to Dismiss\Opposition to the Motions\July 2022 Supplemental Letter 7-7-2022 letter to Court re Scheinman award.doc

FILED: NEW YORK COUNTY CLERK 05/06/2022 11:03 AM

NYSCEF DOC. NO. 42

INDEX NO. 161076/2021

RECEIVED NYSCEF: 05/06/2022



THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, N.Y. 10007

EMERGENCY EXECUTIVE ORDER NO. 62
March 24, 2022

WHEREAS, the COVID-19 pandemic has severely impacted New York City and its economy, and is addressed effectively only by joint action of the City, State, and Federal governments; and

WHEREAS, the state of emergency to address the threat and impacts of COVID-19 in the City of New York first declared in Emergency Executive Order No. 98, issued on March 12, 2020, and extended most recently by Emergency Executive Order No. 46, issued on February 28, 2022, remains in effect; and

WHEREAS, this Order is given because of the propensity of the virus to spread person-to-person, and also because the actions taken to prevent such spread have led to property loss and damage; and

WHEREAS, athletes and performing artists frequently conduct their work at venues both inside and outside of the City, without regard to their residence in the City, and their work benefits the City's economic recovery from the pandemic, often attracting large numbers of visitors to the City; and

WHEREAS, New York City athletic teams have been, and continue to be, at a competitive disadvantage because visiting teams can field unvaccinated players, and this competitive disadvantage has negatively impacted, and continues to negatively impact, New York City teams' success, which is important to the City's economic recovery and the morale of City residents and visitors; and

WHEREAS, additional reasons for requiring the measures continued in this Order are set forth in my prior Emergency Executive Order No. 50, issued on March 4, 2022;

NOW, THEREFORE, pursuant to the powers vested in me by the laws of the State of New York and the City of New York, including but not limited to the New York Executive Law, the New York City Charter and the Administrative Code of the City of New York, and the common law authority to protect the public in the event of an emergency:

Section 1. I hereby direct that section 1 of Emergency Executive Order No. 59, dated March 19, 2022, is extended for five (5) days.

Ex H

FILED: NEW YORK COUNTY CLERK 05/06/2022 11:03 AM

NYSCEF DOC. NO. 42

INDEX NO. 161076/2021

RECEIVED NYSCEF: 05/06/2022

§ 2. I hereby order that section 3 of Emergency Executive Order No. 50, dated March 4, 2022, is amended to read as follows.

§ 3. I hereby direct that:

a. Covered entities that had been covered by the Key to NYC program shall continue to require that a covered worker provide proof of vaccination, unless such worker has received a reasonable accommodation. Covered entities shall continue to keep a written record of their protocol for checking covered workers' proof of vaccination and to maintain records of such workers' proof of vaccination, as described in subdivisions d and e of section 2 of Emergency Executive Order No. 317, dated December 15, 2021.

b. Records created or maintained pursuant to subdivision a of this section shall be treated as confidential.

c. A covered entity shall, upon request by a City agency, make available for inspection the records required to be maintained by this section, consistent with applicable law.

d. For the purposes of this Section:

(1) "Covered entity" means any entity that operates one or more "covered premises," except that "covered entity" does not include pre-kindergarten through grade twelve (12) public and non-public schools and programs, houses of worship, childcare programs, senior centers, community centers.

(2) "Covered premises" means any of the following locations, except as provided in subparagraph (iv) of this paragraph:

(i) Indoor Entertainment and Recreational Settings, and Certain Event and Meeting Spaces, including indoor portions of the following locations, regardless of the activity at such locations: movie theaters, music or concert venues, adult entertainment, casinos, botanical gardens, commercial event and party venues, museums, aquariums, zoos, professional sports arenas and indoor stadiums, convention centers and exhibition halls, hotel meeting and event spaces, performing arts theaters, bowling alleys, arcades, indoor play areas, pool and billiard halls, and other recreational game centers;

(ii) Indoor Food Services, including indoor portions of food service establishments offering food and drink, including all indoor dining areas of food service establishments that receive letter grades as described in section 81.51 of the Health Code; businesses operating indoor seating areas of food courts; catering food service establishments that provide food indoors on its premises; and any indoor portions of an establishment that is regulated by the New York State Department of Agriculture and Markets offering food for on-premises indoor consumption; and

2

FILED: NEW YORK COUNTY CLERK 05/06/2022 11:03 AM

NYSCEF DOC. NO. 42

INDEX NO. 161076/2021

RECEIVED NYSCEF: 05/06/2022

(iii) **Indoor Gyms and Fitness Settings**, including indoor portions of standalone and hotel gyms and fitness centers, gyms and fitness centers in higher education institutions, yoga/Pilates/barre/dance studios, boxing/kickboxing gyms, fitness boot camps, indoor pools, CrossFit or other plyometric boxes, and other facilities used for conducting group fitness classes.

(iv) "Covered premises" does not include houses of worship or locations in a residential or office building the use of which is limited to residents, owners, or tenants of that building.

(3) "Covered worker" means an individual who works in-person in the presence of another worker or a member of the public at a workplace in New York City. "Covered worker" includes a full- or part-time staff member, employer, employee, intern, volunteer, or contractor of a covered entity, as well as a self-employed individual or a sole practitioner.

"Covered worker" does not include:

(i) an individual who works from their own home and whose employment does not involve interacting in-person with co-workers or members of the public;

(ii) an individual who enters the workplace for a quick and limited purpose;

(iii) a performing artist, or an individual accompanying such performing artist, while the performing artist is in a covered premises for the purpose of such artist's performance; or

(iv) a professional athlete, or an individual accompanying such professional athlete or such athlete's sports team, who enters a covered premises as part of their regular employment.

(4) "Proof of vaccination" means proof of receipt of a full regimen of a COVID-19 vaccine authorized for emergency use or licensed for use by the U.S. Food and Drug Administration or authorized for emergency use by the World Health Organization, not including any additional recommended booster doses. Such proof may be established by:

(i) A CDC COVID-19 Vaccination Record Card or an official immunization record from the jurisdiction, state, or country where the vaccine was administered, or a digital or physical photo of such a card or record, reflecting the person's name, vaccine brand, and date administered; or

(ii) A New York City COVID Safe App (available to download on Apple and Android smartphone devices); or

(iii) A New York State Excelsior Pass; or

(iv) CLEAR's digital vaccine card; or

3

FILED: NEW YORK COUNTY CLERK 05/06/2022 11:03 AM

NYSCEF DOC. NO. 42

INDEX NO. 161076/2021

RECEIVED NYSCEF: 05/06/2022

(v) Any other method specified by the Commissioner of Health and Mental Hygiene as sufficient to demonstrate proof of vaccination.

(5) I hereby order that section 20-1271 of the Administrative Code of the City of New York is modified by adding the following provision to the definition of "just cause:" Notwithstanding any provision of this chapter, a fast food employer shall be deemed to have just cause when a fast food employee has failed to provide proof of vaccination required by an emergency executive order issued in response to the COVID-19 pandemic and shall not be required to follow progressive discipline procedures prior to terminating the employee, provided that the employee shall have 30 days from the date when the employer notified the employee of the requirement to submit such proof and the employee shall be placed on leave following such notification until such proof is provided. This provision shall not excuse the employer from the responsibility to provide a reasonable accommodation where required by law.

e. An individual who meets the requirements of subparagraph (iii) or (iv) of section 3(d)(3) of this Order shall be exempt from the Order of the Commissioner of Health dated December 13, 2021, relating to requiring COVID-19 vaccination in the workplace.

§ 3. I hereby direct the Fire and Police Departments, the Department of Buildings, the Sheriff, and other agencies as needed, to enforce the directives set forth in this Order in accordance with their lawful authorities, including Administrative Code sections 15-227(a), 28-105.10.1, and 28-201.1, and section 107.6 of the Fire Code. Violations of the directives set forth in this Order may be issued as if they were violations under Health Code sections 3.07 and 3.11, and enforced by the Department of Health and Mental Hygiene or any other agency.

§ 4. This Emergency Executive Order shall take effect immediately and shall remain in effect for five (5) days unless it is terminated or modified at an earlier date.

Eric Adams
Mayor

4