*** Filed ***
11:04 PM, 29 Apr, 2025
U.S.D.C., Eastern District of New York

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

_____x

BARBARA HILL,

                       Plaintiff               **DOCKET NO. 24-cv-3506-RPK-LB**

          -against-

                                          **AMENDED COMPLAINT**

                                         ***Jury Trial Demanded***

THE DEPARTMENT OF EDUCATION OF

THE CITY OF NEW YORK,

                    Defendant

_____x

**PLAINTIFF BARBARA HILL**, ("Plaintiff") proceeding Pro Se, as and for her Summons and

Complaint filed to protect her Constitutional rights against the above-captioned Defendant

**DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK** (henceforth

"Defendant") alleges upon knowledge as to her own facts and upon information and belief as to

all other matters:

## PRELIMINARY STATEMENT

1. This is a civil action seeking injunctive relief, monetary relief, including past and on-going

     economic loss, and compensatory damages for violations of Constitutional protected rights as

1

a Level Two Physical Therapist in good standing including her right to her religious beliefs as well as accommodations for these beliefs in her workplace.

2. Plaintiff brings this action under 42 U.S.C. § 1983 and §1988; Stigma Plus Employment Discrimination ("Problem Code"); due process guaranteed under the Free Exercise Clause, First, Fifth, and Fourteenth Amendments to  the United States Constitution; 42 U.S.C. § 2000e, et seq.;  religious discrimination and retaliation; New York City Administrative Code §8-107;  and New York City Human Rights Law §296 which prevent employers from discriminating against employees based on an employee's religious beliefs and refusing to, or neglecting to,  prevent such deprivations and denials to Plaintiff.

3. Plaintiff, a physical therapist, worked with children who received Federal funds and services, and was deliberately retaliated and intentionally discriminated against, punished and removed from her workplace solely because of her religious beliefs, which prohibited her from getting vaccinated by the COVID-19 vaccine. As a result, she was terminated in February 2022 without just cause, without proper notice and without a due process hearing to particularize her religious accommodation requests and Appeals.

4. After the COVID-19 pandemic panic became a topic of concern in the fall of 2019, the City of New York started a process that was based upon an autocratic presumption of police power with widespread discrimination in implementing its vaccine mandates.

5. The First Amendment to the Constitution of the United States protects the right of the individual to freedom in his or her religious belief and from bodily harm. This freedom is subject only to the qualification that its exercise may be limited by governmental action where such exercise clearly and presently endangers the public health, welfare or morals.

6. However, while government is fully empowered to make emergency action against life-

threatening dangers, it is bedrock law in this country that constitutional rights and prohibitions do not change in an emergency. "The Constitution was adopted in a period of grave emergency. Its grants of power to the Federal Government and its limitations of the power of the States were determined in the light of emergency and they are not altered by emergency." Home Bldg. & Loan Ass'n v Blaisdell, 290 U.S. 398, 425 (1934).

7. Thus "even in a pandemic, the Constitution cannot be put away and forgotten." Roman Catholic Diocese of Brooklyn v Cuomo, 208 L.Ed. 2d 206, 210 (2020). A citizen has as his greatest right the inviolability of his person. Pratt v. Davis, 224 Ill. 300, 79 N.E. 562 (1903). Affirming the order for transfusions substituted judicial discretion for the individual's judgment. Application of President & Directors of Georgetown College, Inc., 331 F.2d 1000, 1013 (D.C. Cir. 1964), cert. denied 377 U.S. 978 (1964) (dissenting opinion).

8. The instant case illustrates one facet of the problem which arises when public interests conflict with private interests. Prince v. Massachusetts, 321 U.S. 158 (1943); In re Estate of Brooks, 32 Ill.2d 361, 205 N.E.2d 435 (1965). The COVID Vaccine Mandate (CVM) was not neutral or generally applicable, and Defendants refused to give strict scrutiny to any accommodation request or appeal.

9. Despite giving religious-based accommodations (RA) to more than 170 municipal employees similarly situated, and placing many unvaccinated employees on reassignment ("rubber rooms") in Defendants' district offices and at home on full salary, Defendants, acting at all times under color of law, did not grant Plaintiff's religious exemption/accommodation request ("RA"), offered no accommodation whatsoever, and terminated her.

10. Defendants engaged in widespread religious discrimination in implementing its vaccine mandates by discarding due process rights outright for Plaintiff and not all others similarly situated, and adopting a facially discriminatory religious accommodation policy that conditioned an exemption on membership in a favored religion.

11. What is now known is that the City made asking for an accommodation into "misconduct" by putting a Problem Code on Plaintiff's personnel file and fingerprints, a new disciplinary charge used by the Department to punish employees. Termination was their goal. It is also clear that the NYC COVID Vaccine Mandate ("CVM") was unconstitutional, and not neutral or generally applicable when implemented for municipal workers in NYC, including Plaintiff.

12. Defendants acting under color of law created the COVID Vaccine Mandate ("CVM") in order to terminate as many municipal workers as possible in a lawless manner without a constitutionally mandated hearing and punish anyone who challenged their presumed total power. The goal was to fire municipal workers who had employment protections such as tenure and Civil Service titles, which are soundly despised by the leaders of City politics.

13. That's not all that went wrong in 2021-2022. Not a single union in the City agreed with, or ratified, a change of the terms and conditions of employment in their contracts that agreed with the City's mandate to coerce their members into getting vaccinated or lose their jobs. Yet Defendants created an unconstitutional process to disapprove every request for accommodation without changing the UFT-DOE Collective Bargaining Agreement ("BA") and the terms of employment detailed therein.

14. The City used this false information and their power over the City budget and salaries as collateral, permanently destroying the lives of thousands of honest, good workers and their

families. But for the approval of the denial of these protected rights by the Defendant, Plaintiff was maliciously and in bad faith terminated and stigmatized by being placed on the Ineligible/Inquiry or "no hire" Problem Code List.

15. Plaintiff seeks recovery of monetary damages for the violation of constitutional rights and due process enshrined in Federal Statutes and state law, including: (1) her backpay and all benefits and pension steps due after Defendant's violations of law, public policy and rights removed her from her salary and career in October 2021; (2) judgment against Defendant for refusing to or neglecting to prevent such deprivations and denials to Plaintiff pursuant to Civil Service Law §75(b)(2)(a)(ii); such other relief from the retaliation by Defendant after Plaintiff exercised her Constitutional rights to due process and freedom of religion and requested an accommodation so she could continue to work.

## **PARTIES**

16. Plaintiff was an employee for the Department of Education of the City of New York in good standing as a Level Two senior Physical Therapist since 2010. As such, she had protected rights to her position. She also worked with children who received Federal funds for their special services. As a Physical Therapist she was in charge of programs and services funded by the Federal government through Defendant yet was unlawfully denied support for freedom from abuse of process and malicious prosecution, stigma plus character defamation and diminution of her salary and rights due to her claiming a sincere religious belief prohibiting her from getting the COVID Vaccine. At all times relevant herein, Plaintiff was a public employee of Defendant within the meaning of New York State Civil Service Law § 75-b(1)(b).

5

17. At all relevant times, the Defendant has overseen the NYC system of public schools located throughout all five (5) boroughs of the City of New York and been and continues to be a recipient of substantial federal funds, and as such, is subject to the mandates pursuant to City, State and Federal Laws including the First, Fifth and Fourteenth Amendments to the United States Constitution, which prohibit any diminution of human rights, discrimination, fraudulent misrepresentation of the nature and consequences of the COVID Vaccine Mandate ("CVM") and retaliation against individuals, such as Plaintiff herein.

## JURISDICTION AND VENUE

18. The Court has subject matter jurisdiction pursuant to 42 U.S.C. §1983; 42 U.S.C. 2000e(f)(3) et Seq. ("Title VII"); Stigma Plus discrimination; and the First, Fifth and Fourteenth Amendments to the Constitution.

19. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, and 28 U.S.C 1343(2)(4); and 42 U.S.C. 1983, in particular the protections given by the Free Exercise Clause, First, Fifth and Fourteenth Amendments to the Constitution.

20. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a) and NYSHRL as well as state law pursuant to claims codified in the New York City Human Rights Law ("NYCHRL") as Administrative Code §§8-107(3)(a) and (b); in that such claims are so related to Plaintiff's claims within the original jurisdiction of this Court that they form part of the same case or controversy.

21. This Court has pendant and supplemental jurisdiction over Plaintiff's state law and city law claims, as the facts that form the basis of the state and city law claims are substantially similar to the facts that form the basis of the federal law claims. Defendant was at all times

acting under color of law in breaching the covenant of good will and fair dealing with the Plaintiff as well as committing fraud in the inducement.

22. This action seeks recovery for monetary damages – in particular the backpay, car days, pensionable time and other benefits - for the harm caused to Plaintiff's reputation, livelihood, and career; additionally for the distress, suffering, mental, emotional, and physical anguish, and impairment of Plaintiff's ability to secure future employment due to her placement in the Problem Code database, and impairment of earning power inflicted upon her due to the negligence, carelessness, recklessness, and misfeasance, malfeasance, and negligent acts practices, and/or omissions of the Defendant.

23. Plaintiff filed a Notice of Claim and was deposed in a 50-H hearing but the Defendant has not made any attempt to resolve the issues contained therein.

24. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the New York City Department of Education is located at 65 Court Street, Brooklyn, N.Y.

## STATEMENT OF FACTS

25. Plaintiff holds a clinical doctorate in Physical Therapy and was hired as a Level Two senior Physical Therapist since 2010. During the years of employment with the Defendant from 2010 to September 2021, Plaintiff was never informed nor requested by Defendant to obtain any vaccine, and did not get vaccinated because of her sincere religious beliefs which prohibit her taking the chemicals into her body.

26. On March 12, 2020 Mayor Bill de Blasio issued an Emergency Executive Order declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents. Defendant DOE closed all schools within their jurisdiction in New

York City in response to this threat. Plaintiff and most employees were sent home and worked remotely with Google Classroom and other IT software with her students.

27. On August 12, 2021 Harry Nespoli, Chairperson of the Municipal Labor Committee, wrote a letter to Renee Campion, Commissioner of the New York City Office of Labor Relations ("OLR") wherein Nespoli wrote about MLC's officers meeting with the City to negotiate working conditions for municipal employees who could not get the vaccine due to religious, medical, or other reasons. He also mentioned:

> "Make no mistake, despite calling this a vaccination policy, the City's proposal creates a new criterion and process for discipline that would allow agencies to suspend workers without pay and without the typical forms of due process provided for under the collective bargaining agreements and law….no policy should be implemented before it is negotiated."

Nespoli was aware of the secret negotiations going on behind the backs of municipal workers.

28. At the same time, Wolf Blitzer interviewed CDC Director Rochelle Walensky, who acknowledged on national television that the vaccines could not stop transmission of COVID. https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html

29. On September 10, 2021 Defendant sent to Plaintiff an Impact Bargaining Award wherein Arbitrator Martin Scheinman, in excess of his authority, alleged that he had created a new term of employment out of whole cloth called Leave Without Pay ("LWOP"). In New York City human resources there was no such thing as a coerced Leave without Pay that involuntarily removes all Department employees from their jobs if they did not submit a COVID vaccination card to the Department by October 4, 2021. This rule was lawless and invalid as a matter of law. See **EXHIBIT A** Scheinman Award Dated September 10, 2021.

30. In this Award between the UFT and Defendant, Scheinman also created a procedure to apply for religious exemptions that was subsequently found to be "constitutionally unsound" by the NY State Court of Appeals. Scheinman apologized in a separate Award for the error dated June 27, 2022. He wrote in his second Award dated June 27, 2022 that he "created a new leave without pay" by issuing the Award. See Scheinman June 27, 2022 Award**:**

**https://wp-advocatz-uploads.s3.amazonaws.com/uploads/2022/10/Scheinman-June-27-AWARD.pdf**

31. Scheinman establishes, by his own words, that he actively participated in the violation of the Plaintiffs' due process rights. Scheinman was not acting like an arbitrator who interpreted a contract or acted like an umpire in a dispute between the NYCDOE and the United Federation of Teachers ("UFT"), but actively created new policy that, as Scheinman admits, but-for his Award, "the Department was without the authority to remove these employees from the payroll without providing a due process hearing….. admitting that his actions caused the Plaintiffs to "suffer[] a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." Annis v. County of Westchester, 136 F.3d 239,245 (2d Cir. 1998." See **EXHIBIT A** Scheinman Award Dated September 10, 2021.

32. On September 15, 2021 DOH Commissioner Dave A. Chokshi, revised the COVID Mandate to include "Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law."This made the Mandate not generally applicable. **EXHIBIT B.**DOH Mandate.

33. Nonetheless, Plaintiff relied on the September ruling by Scheinman against her interest, because she wanted and needed to keep her job at the Department of Education. On September 20, 2021 Plaintiff applied for a religious accommodation saying that she could

not, and would not be able to get vaccinated due to her religious beliefs. Her beliefs are sincere and deeply held. **EXHIBIT C** Statement of Declination of COVID Vaccine.

34. On September 22, 2021 Plaintiff received a denial of her religious accommodation request from the Defendant saying that she "failed to meet the criteria for religious accommodation" and that no remote site as an accommodation could be offered, because this would be an "undue hardship" for the Department. No details about how or why the remote site would cause an "undue hardship" were given. Many other employees of the Defendant were granted their requested exemptions, both medical and religious, and were reassigned to administrative buildings in the NYC school district. Why not Plaintiff? This is discrimination on top of discrimination. Reassignment buildings for unvaccinated teachers who were granted religious or medical accommodations spoke to reporters:

   **NYC teachers with vaccine exemptions are being treated like pariahs**
   https://nypost.com/2022/03/05/nyc-teachers-with-vaccine-exemptions-treated-like-outcasts/

35. On October 27, 2021 Plaintiff was placed on a Leave Without Pay ("LWOP") and could not work, could not get paid by any vendor connected with the Defendant and could not enter her work or school sites. She was segregated from her colleagues and peers, harassed and discriminated against because of her religious beliefs.

36. In February 2023 Plaintiff found out that when she was put on LWOP Defendant had also placed her fingerprints into a database at the Department called the Problem Code. The Department's "no-hire/inquiry"/"Problem Code" blocked her from getting any salary from the Department, unemployment benefits from the Department of Labor, her pension and health care benefits, and tagged her file as guilty of insubordination and misconduct. She was

given no information about how she could remove this flag and be free to seek work again.
**EXHIBIT D** Problem Code Documents**.**

37. Defendant was embarrassed about the problem code being released to the media, so they directed Mallory Sullivan, Deputy Director of the Office of Employee Relations at the Department of Education, to give false information in a Declaration that **"DOE employment records are only visible to the DOE." EXHIBIT E** .

38. This code made her guilty of misconduct for asking for an accommodation for her religious beliefs so that she could continue working while unvaccinated. At all times Plaintiff was willing to be tested and wear a mask, as required throughout New York State except for New York City. She was never given that choice and she was deprived of her Constitutional due process rights and her right to practice her religion as she wanted and needed to.

39. The CVM was forever afterwards seen as a discriminatory weapon used to punish employees at any and all levels of seniority, tenured/permanent or not. Termination for some but not others was random and arbitrary. Permanent civil servants such as Plaintiff, with protected property rights, were laid off or fired, while delivery people, volunteers to schools, cafeteria workers, school bus drivers, private businesses and Broadway actors, sports players, and private businesses could remain employed and unvaccinated. This makes no sense and shows discrimination against municipal workers' rights.

40. Thus while the City issued blanket unsupported "undue hardship" or "did not meet the criteria" decisions to those municipal workers who requested religious accommodations, thousands of unvaccinated firefighters, police officers and other similarly situated personnel were allowed to continue to work in person unvaccinated due to secular reasons, like

administrative backlog, staffing shortages, and economic carve outs, like Emergency

Executive Order 62:

https://www.nyc.gov/office-of-the-mayor/news/062-003/emergency-executive-order-62.

This is prima facie discrimination and disparate treatment.

41. Plaintiff was removed from salary without due process on October 27, 2021.

42.  On November 15, 2021, after finding the religious exemption appeal process created by

Arbitrator Martin Scheinman and his Company Scheinman Arbitration and Mediation

("SAMS") "constitutionally unsound", the United States Court of Appeals for the Second

Circuit ordered fresh consideration of requests for religious accommodation saying "Such

consideration shall adhere to the standards established by Title VII of the Civil Rights Act of

1964, the New York State Human Rights Law, and the New York City Human Rights

Law…… Accommodations will be considered for all sincerely held religious observances,

practices, and beliefs."

43. On November 28, 2021 the Court of Appeals ruled that the Scheinman Award enriching

himself and his company "Scheinman Arbitration and Mediation Services" ("SAMS") had

created a religious exemption appeals process that was "constitutionally unsound". The

Citywide Panel was created, and was quickly seen as focused on deliberately depriving

anyone who applied, including Plaintiff, of their due process rights under Human Rights

Laws, Federal, State, and City in a similar manner as SAMS. **EXHIBIT F**  ORDER, Court

of Appeals.

44. Until recently, the procedure followed by the Citywide Panel was shrouded in mystery, as

were the people who were on the Panel making decisions. In the Affidavit of one Panel

member, Eric Eichenholtz, he stated the standard of review as " The Citywide  Panel

considers whether the requested religious accommodation presents an undue hardship on City operations. EEOC guidance provides that requiring an employer to bear more than a "de minimis," or a minimal, cost to accommodate an employee's religious belief is an undue hardship." See Affirmation of Eric J. Eichenholtz, In the Matter of Schiefer v The Board of Educ. of the City of N.Y., Index No. 155983/2022, doc. No, 41.

45. This "de minimis" standard used by the Citywide Panel was discarded by the U.S. Supreme Court in the ruling Groff v DeJoy, No. 22-174, June 23, 2023:

> **"Holding**: Title VII requires an employer that denies a religious accommodation to show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business."

Previously, employers could avoid granting religious accommodations to employees of faith simply by pointing to trifling, minimal, or "de minimis" effects. This decision means that more employers will be legally required to respect their religious employees by granting them accommodations.

46. Additionally, physical therapists have been officially recognized as capable of effective treatment by working remotely and virtually. This work is called Telerehabilitation, and is globally known and respected. See Telehealth.HHS.gov. https://telehealth.hhs.gov/

47. New York State Attorney General states in her online booklet titled "Religious Rights in the Workplace" https://ag.ny.gov/publications/religious-rights:

**"Employers Must "Reasonably Accommodate" Religious Beliefs**
State and federal laws require employers to make a reasonable religious accommodation for an employee's sincerely held religious beliefs, unless doing so creates an "undue hardship" on the employer. A reasonable religious accommodation is one that allows employees to follow their religious beliefs with a minor change to the work environment. Protected

religious beliefs include not only those of traditional, organized religions, but also beliefs that are not part of a formal religion or sect, even if practiced by relatively few people.

To assess whether there is an undue burden or hardship, look at the specific facts of the request, such as:
The type of workplace;
The nature of the employee's duties;
Any related cost incurred relative to the size and budget of the employer;
The effect of an accommodation on the employer's business• Collective bargaining agreements or established seniority systems;
The number of people who need the accommodation;
The effect on workplace safety; and
Whether the proposed accommodation conflicts with other laws.

It is also important to know that:
The law protects all aspects of an individual's religious observance and practice, even practices that are not "required" by the religion;
An employee must notify the employer of the need for an accommodation, and must provide sufficient time and information for the employer to assess the request;
Employers and employees should work together to find an accommodation;
An employer may ask questions about religious habits to evaluate the request and identify an accommodation; and
An employer is not required to grant the specific accommodation requested, as long as the accommodation offered meets the employee's religious needs.

48. See also the NY POST article cited above in ¶24. Plaintiff is not fighting the COVID Vaccine Mandate ("CVM") but the manner it denied any and all mention of an accommodation for her sincere religious belief and then punished her for holding such beliefs. Her termination caused harm to the special needs children she had cared for while employed.

49. By discarding due process rights and adopting a facially discriminatory religious accommodation policy, Defendants also conditioned approvals for municipal workers - who wanted to continue working while unvaccinated- on membership in a favored religion and on blind support for an Emergency Use Authorization (EUA) vaccine that was temporary yet created permanent harm for Plaintiffs. This order allowed accommodations for remaining

unvaccinated. Plaintiff was not one of those approved, and was never given any explanation as to why she was given this disparate treatment.

50. On December 7, 2021 Plaintiff was terminated from her Early Intervention caseload at her private Agency, Theracare.

51. On February 11 2022 Plaintiff was terminated.

52. On February 14, 2022 the City of New York Reasonable Accommodation Appeals Panel denied Plaintiff's request for a religious accommodation without attempting to give her a remote location or telehealth possibilities.

53. In a letter dated March 22, 2022 Plaintiff received a letter telling her that on March 16, 2022 Plaintiff and her family were removed from NYC DOE Health insurance, but she could sign up and pay for COBRA, a very expensive program that she could not afford, as the NYCDOE had removed her from her salary.

54. All of the Agencies Plaintiff worked for except the Defendant gave her an accommodation, namely remote work. In February 2024 Plaintiff was rehired by Defendant as a newbie physical therapist at a lower salary.

55. On March 24, 2022, the Mayor issued EMERGENCY EXECUTIVE ORDER 62, https://www.nyc.gov/office-of-the-mayor/news/062-003/emergency-executive-order-62 which gave permission to various members of sports teams, athletes, performing artists and others to remain unvaccinated and still do their work. This infuriated  municipal workers and DOE employees who were terminated for not getting vaccinated, because the City and the DOE showed their cards – the COVID Vaccine Mandate ("CVM") was an Order that was not neutral, and did not have general applicability, but targeted City Agencies, employees at the Department of Education, and municipal workers from all

Unions, without changing any of the terms and conditions of employment. Plaintiff

became aware that there were hundreds of DOE employees wo were given

accommodations for their religious beliefs, but she was not one of them. There was no

information given to her that could justify this disparate treatment.

56. On May 5, 2022, Plaintiff received a notice that her Grievance for being wrongfully

terminated would not go to a Step 2 because the Defendant refused to schedule any such

Grievances, again destroying Plaintiff's rights to constitutionally mandated due process.

**EXHIBIT G**

57. In June, 2022, Arbitrator Martin Scheinman issued a second Citywide Award where he

apologized for setting up the LWOP. In Scheinman's June 27 Award Scheinman wrote:

> "Leave without pay is an unusual outcome. Yet, I decided it was appropriate for
> employees whose requests for a medical or religious exemption were denied. This is
> because such employees intentionally decided to disregard the mandate they be
> vaccinated by September 27, 2021, the date established by Commissioner Chokshi and
> Mayor de Blasio."

Yet Defendants continued to use the LWOP to punish anyone who dared to remain

unvaccinated. See Scheinman June 27, 2022 Award ¶21.

58. "Salus populi" or "health of the people" seems to be the mantra of the Defendants in this

matter except they acted under color of law to make up any arguments that were

convenient for their agenda rather than those that made sense or had constitutional validity.

Salus populi expresses a common law principal for the state's—and NYC's—exercise of

police powers.

59. The agenda of the Defendants was to allow City agencies to cull the municipal workforce

according to a business model created by Jack Welch. Welch said that businesses should

16

always fire the bottom 10% of the workforce every year, because this keeps everyone on their toes.

60. In this case, the Defendants' theme was: "government can restrain individual liberties to the extent it furthers the ends of preventing harm to other citizens. As the CVM stopped the COVID-19 virus in its' tracks, NYC would have a compelling interest to mandate everyone living and working there to get vaccinated. Even if the Vaccine resulted in even mild side effects, the benefit to the public would outweigh the risk to the individual."

61. There was a problem with this argument, namely that the COVID vaccine did not, and does not, stop the transmission of the virus and does not slow the spread of the virus, or prevent COVID-19.

62. All Plaintiff's rights under the Constitution, both Federal and State, city and State Human Rights Laws, NYS Administrative Code, as well as employment rights under the Collective Bargaining Agreements between the UFT and the DOE have been violated, in particular, subjecting Plaintiff to a hostile workplace environment and wrongful termination without any accommodation for her religious beliefs. Defendant wrongfully, deliberately, in bad faith and under color of law attempted to fraudulently induce her to choose to relinquish her protected beliefs in order to submit to an experimental vaccine.

**CAUSES OF ACTION**

**AS AND FOR A FIRST CAUSE OF ACTION
FOR RELIGIOUS DISCRIMINATION**

63. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 62 as if the same were fully set forth at length herein.

64. The criteria for discrimination under a *prima facie* Human Rights Law claim includes: Plaintiff (1) is a member of a protected class; (2) was qualified for her position and

satisfactorily performed her duties; (3) suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of discrimination. In this matter, a review of Plaintiff's Exhibits attached to her Complaint and here shows conclusively that Plaintiff has a sincere religious belief in the harm to come to her if she got vaccinated with the COVID vaccine. (See **EXHIBIT C**). Her facts are credible and valid, not conclusory.

65. However, Plaintiff she did not have to "prove" her beliefs in the first place. The burden, after she gave her statement of religious belief, fell onto the Defendant to prove that they had an undue burden in giving her an accommodation. This standard, key to this case, of Defendant making an effort to accommodate Plaintiff as a senior permanent employee of the NYC Department of Education, was never attempted in any form. The Defendant rests on no reason whatsoever, even in the face of the latest ruling, namely Groff v DeJoy (see U.S. Supreme Court No. 22-174 (Jan. 13, 2023).

66. In *Bonaffini v. City University of New York and Anne Lopes*, 2021 WL 2895688 (E.D.N.Y. July 9, 2021), the court addressed an interesting issue, namely: whether an individual defendant may be liable for discrimination under the New York State and City Human Rights Laws, notwithstanding that their government employer is entitled to sovereign immunity. The court's answer is "yes."

67. In *Does 1-11 v. Board of Regents of University of Colorado*, 100 F.4th 1251 (10th Cir. 2024), the Tenth Circuit held that state university employees were likely to succeed on Free Exercise and Establishment Clause claims and entitled to preliminary injunction against denials of religious accommodation to a vaccine mandate. In *Does*, the Court affirmed that a vaccine mandate is "in no way generally applicable" when government evaluates employee religious

beliefs case-by-case, allowing "individualized exemptions" to applicants whose beliefs, in the government's discretion, merit accommodation. Additionally in that case the Defendant adopted a facially discriminatory policy and then after litigation, offered a so-called "remedial" policy. See the November 28, 2021 ORDER **(EXHIBIT7**,AC; Kane v de Blasio; Keil v City of New York, 21-2678-cv; 21-2711-cv). In this ORDER the Judge cites Arbitrator Scheinman as writing, "The Arbitration Award states that its procedures are to operate "[a]s an alternative to any statutory reasonable accommodation process", and then in a footnote on p. 11 states:

 "We observe that this additional language is superfluous as a legal matter, at least as to religious accommodation under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e, *et seq.* The Commissioner, a City official, could not override Title VII, a federal law requiring employers to offer reasonable accommodations that do not result in undue hardship on the employer. *See* U.S. CONST. art. VI, cl. 2 (Supremacy Clause). Thus, even under the original Vaccine Mandate, DOE employees were legally entitled to request accommodations."

68. Then the Judge wrote, " Plaintiffs have established their entitlement to preliminary relief on the narrow ground that the procedures employed to assess their religious accommodation claims were likely constitutionally infirm as applied to them" p. 4; and, after a motions panel heard oral argument on November 10 2021concerning an emergency injunction by the Plaintiffs, the City conceded that the Accommodation Standards are "constitutionally suspect".

69. Plaintiff was forced into a wrongful termination without healthcare or salary, without due process. She was punished for her "misconduct" of insubordination by being placed into the Problem Code Database (EX. D) The Court of Appeals sent the case (Kane-Keil) to the District Court with an order that the City give all unvaccinated employees at the NYC Department of Education another chance to get an accommodation. The Citywide Panel was

set up, and this secret group was as constitutionally unsound as Scheinman's arbitrators. The decisions of the Panel to deny appellants due to an "undue burden" was a "de minimis" standard, and not the standard cited in Groff v Dejoy. New York City (the "City") and the NYC Department of Education (the "DOE") engaged in a systemic pattern of widespread discrimination against DOE employees seeking religious accommodation from the City's Covid-19 vaccine mandate (the "Mandate").

70. This evidence reveals that despite having a mechanism for reasonable accommodation requests, the Defendant failed to accommodate religious beliefs and the excuse of an undue hardship was merely pretext for discrimination."

71. Plaintiff and her plea for an exemption from the vaccine was never actually heard by anyone. This is not in compliance with the 14th Amendment Due Process Clause. In fact, before Eric Eichenholtz' deposition was made public in social media in the case New Yorkers For Religious Liberty, Inc., et al., v The City of New York, et al., NYED Docket #2022-cv-00752, nothing was known at all about "The Citywide Panel". This is most certainly discriminatory, and bad faith.  An inference that Plaintiff was discriminated against and set up to fail must be made.

72. Title VII of the Civil Rights Act of 1964 and Human Rights Law address religious freedom. The act prohibits employers from discriminating against its employees because of their sincerely held religious beliefs. Title 42 United States Code section 2000e-2(a) states: ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin").

73. The Supreme Court case the EEOC v. Abercrombie & Fitch Stores, Inc. 575 U.S. 768

(2015) concluded that "An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions. Title VII contains no knowledge requirement. Furthermore, Title VII's definition of religion clearly indicates that failure-to-accommodate challenges can be brought as disparate-treatment claims. And Title VII gives favored treatment to religious practices, rather than demanding that religious practices be treated no worse than other practices. Id., 575 (slip opinion pages 2–7).

74. Plaintiff submitted to Defendant in September 2021 a statement on her sincere religious beliefs which forbids her from getting vaccinated with the COVID-19 vaccine. She was denied, yet other teachers similarly situated were granted exemption/accommodations. No standard or justification was given.  A law that infringes on a fundamental right must meet a certain standard to be constitutional and it is clear that Defendant did not meet the standard for religious tolerance, accommodation, or equal protection under any law. Instead, Defendant acted unreasonably and in a discriminatory manner against Plaintiff when they denied her religious accommodation without explanation.

75. The Citywide Panel approved the religious accommodation requests of more than 150 teachers and/or municipal workers, and allowed private unprotected individuals to work without being vaccinated, yet denied Plaintiff without any legally recognizable justification. The flagging of her fingerprints harmed Plaintiff by blocking her from her salary, pension, health benefits, unemployment benefits, and her career, without any just cause. See: **The Citywide Panel and the Final Judgment in Kane-Keil-New Yorkers For Religious Liberty,** https://advocatz.com/?s=Citywide+Panel Dr. Jayanta Bhattacharya wrote in 2021 about the COVID-19 virus and about how there did not have to be a mass termination of

people who would not, could not, or did not get vaccinated. See his Declaration submitted in Kane v De Blasio in 2023, p. 25:

"In conclusion, the emerging evidence from the medical literature finds that COVID-recovered patients have robust and long lasting immunity against SARS-CoV-2 reinfection; that this immunity against infection is better than vaccinated patients who have never had COVID; that the vaccines—though safe for most people—do sometimes cause known severe side effects; that for patients with particular chronic conditions, including Multiple Sclerosis, the data on the safety and efficacy of the vaccine is still uncertain; that the development of the mRNA vaccines and the production of the adenovirus vector vaccines both involved the use of fetal tissue cell lines, to which some people have sincere religious objections; and finally that there exist inexpensive safe accommodations that the DOE can adopt which would protect both employees and customers against SARS-CoV-2 infection without terminating unvaccinated employees". The supporting Affidavit of Dr. Harvey Risch is in this post as well.

76. Also in the post cited above are the deposition testimonies of Citywide Panel members Eric Eichenholtz, the creator of the Citywide Panel; Kathy Rodi, on her actions as a member of the 'General Committee' where she represented the DOE and denied everyone who applied for a religious accommodation; Allan Deutsch from DCAS; Michael Melankowsky (Citywide Panel and EEOD for NYPD); and the Affirmation of Florina Getman.

77. None of these Citywide Panel members honored their mandate from this Court and the Court of Appeals (See ORDER, **EXHIBT F)** to meet the standard for granting religious accommodations under TITLE VII, NYSHRL and NYCHRL and Groff v Dejoy (U.S. Supreme Court, Groff v. DeJoy, 600 U.S. 447 (2023). In Groff, the U.S. Supreme Court ruled

22

that employers cannot refuse to accommodate an employee's request for religious accommodation under Title VII of the Civil Rights Act of 1964 unless they can demonstrate that it would have a *substantial increase in the cost of doing business*." (emphasis added).The Groff v. DeJoy decision establishes a new definition of "undue hardship," making it fundamentally more difficult for employers to brush aside employees' requests because they either inconvenience the employers or have expenses associated with the requests. This decision not only changes the standard for evaluating these cases, but will also likely increase the number of requests made by employees and cases filed by lawyers as the courts determine how to apply the Groff decision." **Groff v. DeJoy: A paradigm shift for religious workplace accommodations,** February 5, 2024

https://news.mobar.org/groff-v-dejoy-a-paradigm-shift-for-religious-workplace-accommodations/

78. Defendants have neither a legitimate nor compelling interest in exercising express and overt religious discrimination. Defendant's invocation of "undue hardship" defenses are plainly false pretexts attempting to cover for the Defendant's explicit religious discrimination.

79. Defendant had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" without any further details or reason, and terminated her employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023 :

> "The Court holds that showing "more than a de minimis cost," as that phrase is used in common parlance, does not suffice to establish "undue hardship" under Title VII. …..
> What is most important is that "undue hardship" in Title VII means what it says, and courts should resolve whether a hardship would be substantial in the context of an employer's business in the commonsense manner that it would use in applying any such

23

test….. Further, a hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice, cannot be considered "undue."  Bias or hostility to a religious practice or accommodation cannot supply a defense."

80.  Defendant wrongfully, deliberately, in bad faith and under color of law attempted to fraudulently induce her to choose to relinquish her protected beliefs in order to submit to an experimental vaccine, and then punished her for not agreeing to this extortion and discrimination.

81. The Free Exercise Clause also ascertains that government may not attempt to regulate religious beliefs, compel religious beliefs, or punish religious beliefs. Sherbert v. Verner, 374 U.S. 398, 402 (1963); Torcaso v. Watkins, 367 U.S. 488, 492–93, 495 (1961); and United States v. Ballard, 322 U.S. 78, 86 (1944).

82. A government employer may not punish some employees, but not others, for the same activity, due only to differences in the employees' religious beliefs.  Likewise, the government may not test the sincerity of an employee's religious beliefs by judging whether his or her beliefs are doctrinally coherent or legitimate in the eyes of the government.  Nor may a government employer discriminate against religion by implementing policies that exempt employees for secular reasons more readily than religious ones.  All such discrimination violates the Free Exercise and Establishment Clauses of the First Amendment and the corresponding rights incorporated against the states by the Fourteenth Amendment.  "When there is no plausible explanation for religious discrimination other than animus, it is subject to strict scrutiny, regardless of whether the government employer admits that its actions were motivated by hostility to certain religions." (JANE DOES et al., v BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO et al., No. 22-1027, U.S. Court of Appeals D.C. No. 1:21-CV-02637-RM-KMT., May 7, 2024).

83. New York Supreme Court Judge Arlene Bluth, in her Decision to grant Petitioner

    Alexander Deletto his religious accommodation after he was denied multiple times by

    the New York City Police Department and the Citywide Panel (Index No.156459/2022),

    wrote:

    "The Citywide Panel denied his request for a religious exemption, writing simply that his application "Does Not Meet Criteria" (NYSCEF Doc. No. 3). That was it – no reasoning, no discussion of petitioner's arguments, not a single mention of anything particular to petitioner at all– just "Does Not Meet Criteria."……. Essentially, petitioner argues that his religious beliefs forbid him from getting the required vaccination.  The initial denial failed to include any specific or individualized reasons for denying petitioner's application – the denial checked off three boxes.  As stated above, the denial was indicated on what appears to be a standard form containing various reasons for why a religious exemption might be denied (NYSCEF Doc. No. 15).  The problem for this Court is that these reasons are entirely conclusory and the Court is unable to analyze how those checked boxes relate to petitioner's application without the Court imagining what the person who checked the boxes could possibly have been thinking.  For instance, the first reason "checked off" is that the "Objection was personal, political or philosophical" (id.).  While that might be a good topic sentence, it is not followed by any analysis as to why petitioner's specific application was personal, political, or philosophical.  It is not this Court's role to imagine what the agency might have said or should have said – it is the duty of the agency to explain why it made the decision.  Here, the Court has no idea why the agency thought, or even if it did think, that the objection was personal or political or philosophical.

    The denial by the Citywide Panel is even more lacking.  It merely stated that petitioner's request did not meet the criteria.  Such a determination is wholly devoid of any reason whatsoever and cannot therefore be viewed as rational."…….. the court is powerless to sanction the determination by substituting what it deems a more appropriate or proper basis.  Consequently, neither Supreme Court nor this Court may search the record for a rational basis to support respondent's determination, or substitute its judgment for that of respondent" (Matter of Figel v Dwyer, 75 AD3d 802, 804-05, 907 NYS2d 75 [3d Dept 2010] [internal quotations and citations omitted])."………..
    The absolute lack of any rationale whatsoever makes it just as likely that the Citywide panel flipped a coin to make the challenged decision.  Such a decision, with no discussion of anything whatsoever, can only be arbitrary and capricious……….The problem for this Court is that it cannot tell whether the members of the Citywide Panel debated petitioner's requested exemption for weeks or not at all because they did not produce a written determination capable of being evaluated by this Court."

84. Based on the foregoing, Defendant subjected Plaintiff to discrimination on the basis of her

    religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her

    employment on the basis of her religion, in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e, *et seq.,* 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law), and N.Y.C. Human Rights Law.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR FAILURE TO REASONABLY ACCOMMODATE
## THE PLAINTIFF'S SINCERELY HELD RELIGIOUS BELIEFS

85. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 84 as if the same were fully set forth at length herein.

86. Plaintiff has sincerely held religious beliefs which forbid her from getting vaccinated with the COVID-19 vaccine.

87. Defendant had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" on the Department without any further details or reason, and terminated her employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023.

88. No reasonable accommodation was offered to Plaintiff yet other employees of the Defendant received accommodations for their religious and/or medical accommodations. Indeed, employees accused of misconduct just like Plaintiff, with a Problem Code now on her file and fingerprints, have been reassigned to the famous "rubber room" since the mid 1990s. This reassignment may last from several months to 7-15 years. Defendant's Office of Personnel Investigation ("OPI") is the same office that monitors the Problem Code and actively sent employees of the Defendant into reassignment rooms/locations during the 2020-2021, 2021-2022 school years. See NY POST article, ¶34. Defendant refused to reassign Plaintiff, despite the reassignment of hundreds of other employees.

89. Absent Teacher Reserve ATR could easily replace a permanent teacher who must be remote:

 **In NYC the Absent Teacher Reserve and The Rubber Room Are Both Strategies For Unlawful Denial of Tenure Job Protections**
https://www.parentadvocates.org/index.cfm?fuseaction=article&articleID=8958

and,

**Is Anyone Listening? An Open Letter From An Excessed E.L.A. Teacher Who Is Now**

**An ATR** https://web.archive.org/web/20110726015153/http://www.edwize.org/is-anyone-listening-an-open-letter-from-an-excessed-ela-teacher.

The ATR pool is still in NYC schools, with approximately 1000 DOE employees wandering from school to school, class to class, whenever a teacher is absent or on leave. This title is another secret of the DOE, because this role can fill the temporarily empty place of a full time teacher who had to be reassigned because he/she is unvaccinated. Defendant created this substitute workforce in 2005 but now keeps all information away from the public eye because they need to argue against the very unspecific "undue burden " of replacing all the unvaccinated  with skilled teachers already in the NYC public school system. The goal of the Defendant was always to permanently remove by termination highly paid, senior educators from their jobs, because the numbers of students attending school daily has fallen since 2020. The schools' budget, Galaxy has to be reduced.

Additionally, the Defendant has had remote teaching Programs available to students for many years. See **Exhibit H**, a TEACHER VACANCY Notice from 2022.

90. In Garvey v City of NY Index no. 85163/2022, Judge Ralph Porzio wrote in his decision:

There was no reason why the City of New York could not continue with a vaccine or test policy, like the Mayor's Executive Order that was issued in August 2021…Though vaccination should be encouraged, public employees should not have been terminated for

their non-compliance….The Health Commissioner cannot create a new condition of employment for City employees. The Mayor ***cannot exempt certain employees from these orders, as stated in***. ***Executive Order 62***". See**,** Executive Order 62 ¶.

91.  Additionally, this Court should be aware that delivery people, school bus drivers, as well as food servers were exempt from Defendant's COVID mandate. None of these people were included in the order to get vaccinated or get fired.

92.  Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

<u>**AS AND FOR A THIRD CAUSE OF ACTION**</u>
<u>**PLAINTIFF HAS PLED A MONELL CLAIM PURSUANT TO SECTION 1983 FOR DEFENDANT'S PATTERN AND PRACTICE OF DELIBERATE INDIFFERENCE TO VIOLATIONS OF CONSTITUTIONAL RIGHTS**</u>

93.  Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 92 as if the same were fully set forth at length herein.

94.  A Monell claim in federal court arises from the Supreme Court case Monell v. Department of Social Services (1978), which established that local governments can be sued under 42 U.S. Code § 1983 for constitutional violations caused by their policies or customs. Unlike individual officials, municipalities can only be held liable if their actions stem from established policies or practices, not just the actions of individual employees.

95. Monell claims are based on the principle that local governments, like cities and counties, can be held accountable for the unconstitutional actions of their employees when those actions are attributable to a municipal policy or custom.

96. This means that if an employee's actions violate someone's constitutional rights, and those actions were caused by a policy or custom of the municipality, the municipality can be sued under § 1983. Baker v. McCollan, 443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433, 1979 U.S. LEXIS 141 (1979).

97. Thus, under Monell, a governmental entity can be held liable for a Section 1983 violation only for its own violations of the federal Constitution.

98. Under Monell, a governmental entity's "own violations" consist of a policy or custom made by lawmakers or by those "whose edicts and acts may fairly aid to represent official policy." Monell, 436 U.S. at 694.

99. The elements of a Monell claim are: (1) deprivation of a federal right; (2) some governmental action can be traced to the deprivation, i.e., policy or custom; (3) policy or custom demonstrating the governmental entity's fault, i.e., deliberate indifference; and (4) municipal action that was the moving force behind the federal violation. Dean v. Wexford Health Service, Inc., 18 F.4th 214, 235 (7th Cir. 2021).

100.    In the statements and causes of Action above, Plaintiff has met the elements of a Monell Claim by showing the Defendant's deliberate indifference to Plaintiff's Constitutional rights given under the First, Fifth and 14th Amendments as described above.

101.    Defendant had the final decision-making authority and is directly responsible for the deprivation inflicted on Plaintiff as described here.

**WHEREFORE,** the Plaintiff demands judgement against the Defendant for all compensatory, emotional, psychological and punitive damages, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which she is entitled, including but not limited to:

1.  Awarding Plaintiff her former salary plus all salary steps given by her Union since she was removed from payroll in 2021;

2.  Removing Plaintiff from the Problem Code;

3.  Granting such other and further relief that the Court seems just and proper.

Dated: April 29. 2025

/s/Barbara Hill

Barbara Hill
*Plaintiff Pro Se*
1423 East 104 Street
Brooklyn, N.Y. 11236
b.cazeau@gmail.com
347-200-4003